The opinion of the Court was delivered by
Duncan J. —
For a statement of the facts, I refer to the Judges’ notes. In what stage of the trial, the matter proposed to be proved by William Heller, was offered, ad fitted, and excepted to, does not distinctly appear from these notes ; nor does it appear, whether William Heller was examined, but it does appear, that the same matter was proved bv other witnesses ; and it is to be observed, that the objection was not personal to the witness, — to his competency, but to the matter proposed to be proved by him. The exception was to any declaration made by Daniel Stable. Not to the witness who was called on to prove it, but the subject of proof. But I do not ground the answer to the objection now made by the defendant in error, “ that it does not appear that William Heller was examined at all,” on the reason that the testimony excepted to, was given by other witnesses ; hut on one more satisfactory, and quite conclusive. The bill states, that evidence was offered and objected to; the objection overruled, and the evidence admitted, for reasons said to he annexed to the bill, which do not however appear. I cannot then by implication, contradict this complete bill, and distinct and separate act, set out in the history of this trial; and if I looked beyond that to the Judge’s notes, the conclusion would not be a just one, in point of fact, that the evidence was withdrawn, for the evidence objected to was given. Every bill of exceptions is to be judged of by itself. It is an isolated matter, a point; If the evidence was waived, the bill ought not to have been returned. It is returned ; and we must suppose it to be as it is returned ; and we are bound so to consider it, and decide it, as evidence received. Was it admissible, is the question? Admissible for any purpose, either in chief, or to impeach the credit of Daniel Stable, by evidence of his declarations, inconsistent with what he testified ? The plaintiff below, claiming under a sale by the Sheriff, of the house *324 and lot as the property of William Stable, the son of the plaintiff in error, gave in evidence, an agreement by Jacob to sell and convey to this Daniel, his son, of Daniel’s possession, and of his sale to William, another son, of William’s possession at the time of the levy, and of a sale made on a venditioni exponas on the same judgment to Daniel himself, but which was returned, unsold, Daniel not complying with the conditions of the sale and time given ; and then contended, that the possession was fraudulently changed, for the purpose of defeating the judgment and execution. Whatever might be the rignt of property, the possession after the levy, could not be changed so as to affect the rights of the creditor, even to him who held the legal title, by one who held an equitable interest, to become a legal and absolute one on the payment of money. It is not necessary to decide, whether on the evidence given of an. alleged combination between the father and his sons, to defeat the execution levied, any declaration made by the sons, would be evidence in this action by the father, to which they were not parties ; for Daniel was the father’s witness ; and on his cross-examination, questions were put to' him by the defendant in error, which were not objected to, and to which objections would be vain; for he had undertaken to give an account of the possession of his father, his brother, and himself. He claimed under his father, obtained possession, and sold to William, who went into possession on that sale, with the full knowledge of his father j and to these questions the witness answered thus: — “ I never told any person I paid my father two thousand dollars for this property, as I recollect. I never said William Stable paid me two thousand dollars for this property.” If the evidence of Daniel’s declarations was admitted on this first examination, even then was the inquiry competent to prove that he had said he had paid Jacob three hundred pounds and upwards, part of the consideration money of the house and lot; for the witness, sworn to tell the whole truth, should have stated, I never told any one this, because it is not true, but I did say, I had paid my father three hundred pounds and upwardsand proof to that effect would weaken his credit. The precise sum paid was not the sole inquiry, but whether he had said he had paid his father any money on account of the house and lot, was included in *325 the question. But as we make the bill of exceptions the rule against the defendant in error, so in justice, it must be the rule on both sides. On his second examination by the defendant in the action, Daniel testified, that he gave some money to his father, both before and after he got the house, not amounting to three hundred pounds. The declaration offered to be proved, was in direct opposition to this. It was*, that he had paid his father three hundred pounds and upwards. The bill states, that the plaintiff and defendant “ gave in evidence, prout the Judge’s notes, and the deeds and instruments therein noted, and the plaintiff further to maintain the issue, offered,” &c. We must therefore conclude, that all in the Judges notes had been previously given in evidence, and cannot measure the vacant spaces in the notes, in order to occupy one of -them with the bill, and thus ascertain at what stage of the trial the evidence was received. To impeach the credit of Daniel Stable ; to shew that at different times he had made declarations inconsistent with what he swore, the evidence was proper. With respect to the charge of the Court, I have examined it with great, attention, and cannot find in it any of the imputed errors assigned, as grounds of reversal. The true and the only question was stated by the Court, “ Was the possession which William Stable had at the time of the levy, changed and delivered by him to his' father, with a view of defeating or delaying the remedy of the creditor ?” If it was, then the conclusion was correctly drawn, that the purchaser would be entitled to the benefit of that possession ; and if the defendant in that ejectment had a superior title, he must pursue it in ejectment against the purchaser. It was the sum and substance of the Judge’s charge, that if the defendant came into possession by collusion with William, the plaintiff ought to recover; and the law is, that as between the purchaser and the defendant in the action, the purchaser can recover on the strength of the sale and Sheriff’s deed, without showing other title, nor can the defendant shew title in another; and if it was a tenancy, the plaintiff will be tenant also, and estopped, in a suit by the landlord, from disputing his right in the same manner as the original tenant. So if it was a sale of an equitable interest held on articles of agreement, the purchaser holds the possession, subject to the payment of the purchase money. No *326 injury is done to Jacob Stable. Possession, which ought not to have been changed, is restored__things are placed in statu quo, without divesting him of any right to his purchase money, which, holding the legal title, he may enforce by ejectment, against the land, into whatever hands it may come. Wiselv then is it ordered, that a defendant under a Sheriff ’s sale, becomes quasi tenant at will to the purchaser, and will not be suffered to set up an adverse title. The action of ejectment, is a possessory action, in which the right of possession, and not that of property, is tried ; for if it were an action of property, then one vei diet and judgment would conclude. 1 his is only restoring the possession fraudulently obtained, and not depriving the father of any right to the property, but a mere restitution of a possession surrendered by the debtor, for a fraudulent purpose, — the removal of an impediment, fraudulently' interposed to delay a creditor of of his remedy ; and it is consistent with all the laws of property, that the right of property may be in one, while the right of possession is in another. Hence it is, that from the time of the levy, the jus possessionis is in the Sheriff’s vendee, where the debtor is in possession at the time of the levy. But this would be of little consequence, if it were open to a shifting of the possession ; and as between landlord and tenant, the tenant cannot set up a title against h¡s landlord, so neither can the real owner to whom the tenant treacherously has delivered the possession ; and as the purchaser at Sheriff’s sale is quasi landlord, landlord by relation to the levy, (if not further back) he is equally, within the same reason ; and this was expressly decided at Nisi Prius. Lessee of Culbertson v. Martin, 2 Yeates, 443. The Legislature of this State has extended the same protection to him as to the landlord, and afforded the same relief by a summary mode of proceeding ; and the Act of 6th April, 1802, for the relief of purchasers at Sheriff’s sale, specially provides, that to prevent a delivery of the possession to the purchaser, under the summary mode prescribed, the person in possession, other than the defendant in the action, is required to make oath “ that he hath not come into possession, and doth claim to hold the same by, from, or under the defendant in the execution.” The man who by collusion with the defendant, obtains his possession, could not truly swear, that he did not *327 come into possession by, from, or under him. A tenant cannot attorn, unless it be in consequence of some judgment of law, or order of a Court of Equity, or with the privity and consent of the landlord. This is necessary to preserve the rights of the landlord, — to guard against the disloyalty of the tenant. If he cannot do this act directly, he cannot indirectly, by giving up that possession to a stranger, which he is bound to deliver back to the landlord, produce the same consequences to the landlord j and we have seen that the purchaser at Sheriff’s sale, is quasi the landlord of the defendant in possession. In a case circumstanced as this was, the purchaser never could be affected by the declarations of Daniel and William. A sale from the father to one son, and from that son to another, with possession, and a deed prepared at the instance of both father and son, and money paid, would be sufficient to throw the burden of proof on the father, to shew a right to the possession, divested of all fraud. The Sheriff is not the agent of the purchaser at Sheriff’s sale. He is a public officer, invested with a high authority. It is the interest of all parties, creditors and debtors, to encourage and protect bona fide purchasers at Sheriff’s sale; and this is the policy of the law ; for a purchaser at Sheriff’s sale, other than the plaintiff, is not affected by the irregularity of the proceedings. No wise man would buy at Sheriff'’s sale, and give any thing like the value, if he was to be affected by notice of adverse claims, not publicly communicated at the time of the sale to the bidders, though made known to the Sheriff. Notice to the Sheriff, is not notice to him. '
Judgment affirmed.