The Chief Justice
delivered the opinion of the Court.
In examining the claim of the defendant to the new trial which ho seeks by the present motion, the admissibility of certain documentary evidence which he offered and which was rejected by the judge, is first to be considered.
In deducing title to the premises in controversy, he proposed to prove a deed of conveyance from Margaret Roy to Joseph I. Roy; and for this purpose offered an entry in the book of record of deeds of the county of Sussex, purporting to be such deed, and to have been proved before a master in chancery. The proof as entered is as follows: “New Jersey, Sussex cdunty, to *wit: Peter Smith, the instrumental witness to the within deed came before me, John Johnson, Master in Chancery of said state, who being duly sworn, deposeth and *50 saith, that he was present and saw Margaret Boy, the within grantrix, execute and deliver the same voluntarily for the uses and purposes therein expressed. Sworn at Newton the 13th May, 1813. John Johnson.” In the entry upon the record, the name of Peter Smith did not appear as an instrumental or attesting witness. The evidence of the deed was overruled by the judge.
The record, legally made, of a deed or conveyance, and the ■ transcript of such record duly certified, are to be received in evidence in any court of this state, and are declared by statute to be as effectual and available as if the original deed or conveyance were then and there produced and proved. But to entitle the deed to be placed upon record, and thereby to give the record or a transcript, the efficacy above mentioned, it must be “ acknowledged by the-party or parties who shall have executed it, or be proved by one or more of the subscribing witnesses.” The clerk is-authorized to record such deeds only as are so acknowledged or proved; and he is to record them “ by entering word for word,” of’ the deed and of 'the acknowledgment or proof. ITence if the deed be entered in the book, without due proof or acknowledgment, the entry is of no avail. It is no record. The proof, as already seen, is to be made by one or more of .the subscribing witnesses. The most regular and usual mode of proof, is for the witness to swear, not only that he was present and-saw the deed executed, but also that at the-time of the execution he subscribed his name as a witness-thereto. I do not mean to say, for it is not necessary on the present occasion to express any opinion on the subject,, that it is indispensable, although it is certainly prudent and commendable, to state in the certificate that the person swore that he subscribed his name as a witness when file-name appears as such upon the face of the instrument. But without question it ought to appear on the instrument, or under the oath of the witness in the certificate, that the-person called to prove the deed is a subscribing witness. *51 The statement of the officer, as in the present case, that he is such, when the fact does not appear either in The oath or on the deed, is ineffectual. And the reason is that this is a matter "x'which is not to depend merely on the assertion or certificate of the officer. This question would be deemed a very plain affair, notwithstanding the certificate of the officer, if the original deed had been produced, and the name of Peter Smith was not found as a subscribing witness. The record being produced, the question justly considered is equally plain. For the record is to be only as available as the original. The defendant’s counsel say it may be presumed the clerk has, in copying the deed into the book, omitted the name of Smith. But the legal presumption is the other way. An officer is presumed to perform his duty; and the statute as already quoted, requires him to enter the deed “ word for word.” Some doubtful ground for such presumption against the clerk might perhaps exist, if it appeared by the master’s certificate that the witness had sworn before him that he had subscribed his name to the instrument.
My conclusion is, that the entry on the book of records was properly overruled.
The defendant also proposed to prove a mortgage of the lands in controversy, from Joseph I. Roy to Margaret Roy. He did not produce the original mortgage but proffered secondary evidence. He shewed the book of registry of mortgages for the county of Sussex, in which is contained an entry of such mortgage; and John Johnson, esquire, testified that the abstract there entered, is in his handwriting ; that ho was at the time of the entry the clerk of the county; and that he had seen and inspected the original mortgage. In the margin of the book opposite the abstract, was an entry that Susan Roy, executrix of Margaret Roy, had acknowledged by writing under her hand, satisfaction of the mortgage, and that the original was destroyed by lire. In whose handwriting this marginal entry was made was not testified at the trial.
*52 Between our statutes directing the recording of deeds and the registry of mortgages, there are two points of essential difference. The deed, as one great purpose of the record, is to preserve and perpetuate muniments of title, is to be entered at full length, “ word for word,” but of a mortgage, as the purpose is mainly for notice of the incumbrance, an abstract only is to be entered. The other .more important point of difference is that while, by the statute, the record of the deed and a transcript are *made as already mentioned available evidence in the stead of the original, no such efficacy is given to the registry of the mortgage. Hence therefore the record or the transcript may be freely produced without accounting for the absence of the original deed ; but the registry of a mortgage is not in like manner admitted. To prove the existence and contents of the mortgage, the original must be produced on the trial or its loss or destruction shewn, or absence accounted for, on common law principles. Was, then, the destruction of this mortgage duly proved as was attempted ? One of the counsel of the defendant intimated that he was not the proprietor of the mortgage, a smaller measure of evidence was sufficient for him. But I find no such distinction. The rule is indiscriminate; and whoever will establish a written document, whether the proprietor or a third person, must produce it, or unless he shew it to be in the possession of his adversary, must entitle himself, in one and the same manner, to the substitution of secondary evidence. The only proof proposed, on this occasion, of the destruction of the mortgage, was the entry in the margin. But that entry had no more legal efficacy for this end, than the white paper on which it was written. If, because found on the book, there is a legal presumption that the entry was made by the clerk, it was not done in the discharge of any official duty ; and can therefore receive no attention or respect. A clerk may enter the redemption, payment or discharge of a mortgage, or satisfaction as it is sometimes *53 called, upon the margin opposite tlie abstract, when the original mortgage is produced, to him, either cancelled or with a receipt thereon, signed by the mortgagee or his executors, administrators or assigns. But as to the destruction of the mortgage or any such extraneous fact, the clerk has no authority to enter or record it; and such entry, if he makes it, is a mere waste of ink and labor. Upon the trial, then, no proof having been given of the destruction of the original mortgage, nor its absence legally accounted for, the registry of the abstract was properly overruled by the judge.
These preliminary points being adjusted, we may now examine the case with less complexity. We are to lay aside the deed and mortgage. Speaking from the evidence, no conveyance of the premises in question was ever made by Margaret Roy to * Joseph I. Roy. If she became seized under the will of her father, she remained so until her decease. The application of these positions will be seen in the sequel.
The lessor of the plaintiff gave in evidence a deed of bargain and sale in fee simple, for the premises in question, from David Gustin to him, bearing date on the 14th day of February, 1811. At, and some time before the making of this deed, David G-ustin resided on the farm and worked it, but whether exclusively, does not distinctly appear. Margaret Roy and some of her children also, lived on the farm, and she continued there until her decease; but at and for some time before John Gustin obtained possession, in the manner hereafter to be mentioned, David Gustin was the sole possessor. Several deeds to David Gustin, for parts of the premises, wore also produced; bur they vested in him no title, because the grantors had none, and will be no farther noticed.
About six or seven years before the trial, John Gustin, the defendant, sent two persons to the farm to take possession for him. They told David Gustin who was then, as *54 lias been mentioned, in the sole possession, that they had come, by orders from the defendant, to take possession. David Gustin delivered the possession to them for the defendant, who, by his tenants, has ever since held it. The defendant shewed, on the trial, that Caspar Shafer was in possession of the farm many years before his death; that he died there in the year 1784; that by his will he devised it to .his daughter, Margaret Roy, wife of John Roy; that they occupied it until the decease of John Roy, in 1808; that his widow, Margaret, lived there, though not exclusively, until her decease, in June or July, 1815. The .defendant farther produced in evidence a judgment against Joseph I. Roy, one of the children of Margaret Roy, entered in the Sussex Common Pleas in August, 1815, an execution issued thereon, and a deed from the sheriff of the county, reciting a sale under the judgment and execution, and purporting to convey all the estate of Joseph I. Roy in the premises in question, to the present defendant. But the farm was never conveyed by Margaret Roy to Joseph I. Roy. On the contrary, by her will, given in evidence on the part of the defendant, she devised all her real estate to her daughter, Susan Roy. PTor did it appear *that Joseph was even living on the premises, or in anywise in possession at the rendition of the judgment, or between it and the sale. The deed from the sheriff therefore, vested no estate in the farm in John Gustin.
The defendant farther attempted to deduce a title in the following manner: He gave evidence of a judgment of this court in 18Ó8, against David Gustin and Thomas Gustin, at the suit of John Corlies, of an execution issued thereon shortly after the entry of the judgment, and a deed from himself, then sheriff of the county of Sussex, to Benajah Gustin, for the premises in questiou, reciting a sale under that judgment and execution, and bearing date on the 27th May, 1813. He then read a deed from Daniel Swayze, sheriff of the said county, to him, the present defendant, *55 dated 31st May 1817, reciting a sale made under a decree and execution of the Court of Chancery, against Benajah Gustin, and purporting to convey to the defendant, all the right of Benajah Gustin to the promises. Ho exemplification of a decree or execution was produced. As these essential links of the chain were wanting, no title was, in this way, shewn in the present defendant.
The defendant also produced, on the trial, a deed of bargain and sale, from David Gustin and wife to himself, for one-twelfth part of the premises in question, dated the 5th day of December 1807. But this deed was not recorded until the year 1814, after the deed from David Gustin to the lessor of the plaintiff, had been executed, delivered and recorded, and no notice of this conveyance, either actual or constructive, to the lessor of the plaintiff was shewn. The deed was, therefore, “ void aiid of no effect,” against Daniel ITarker, “ a subsequent bona fide purchaser, for a valuable consideration, not having notice thereof.”
From this view of the evidence, it appears that John Gustin, when he obtained possession as heretofore mentioned, had no title whatever to the premises; and this fact will be assumed in the farther investigation.
The case then is reduced to the simple question, whether having thus obtained possession, he can protect himself, having no title and entering without title, by impeaching the title of Daniel Harker, or by shewing an outstanding title in another person.
*David Gustin, having conveyed by deed all his estate and interest in the premises to Haiker, and remaining afterwards in possession, is, while he continued in pos•session, deemed the tenant of the latter, and was liable to be dispossessed by him, whenever lie thought proper to put an end to the tenancy and to resume the premises. Gustin’s possession, as long as it continued, was the possession of Harker. If David Gustin, remaining on the farm, had been the defendant in this ejectment, the recovery of the plaintiff *56 would have been too plain for hesitation or controversy. He could not have impugned the title he had himself asserted and professed to convey, nor impeach the validity of his own deed, nor set up a subsisting title in Susan Roy, or Benajah Gustin, or any other third person. Does John Gustin, coming into possession as he did, stand on firmer ground ? He took possession either under David Gustin, or as an intruder, and, as already shewn, without title. I am inclined to think it would not be difficult to demonstrate, that upon the uncontroverted state of facts, he would be held to have come in under David Gustin. His agents told David, they had come by his orders to take possession, and David delivered up the farm to them. Is it not somewhat strange, if, in good faith and without collusion, he thus delivered up the possession to a stranger, at sight, upon asking, and without any communication to his grantee and landlord? If John had made, at the time of this transfer, some pecuniary compensation to David, there would, I presume, have been no room for dispute, that he came in under him. And if something else, was the consideration, or there was even none, and but a simple permission to enter, I am at a loss to discern any j ust difference in the effect. But I pursue these topics no farther, and mean to express no opinion upon them. The position is unquestionable, that the defendant entered either under David Gustin, or as an intruder; either by his consent, or against his will, and without his permission. Either way, the law is well settled. If he entered under David Gustin, with his consent, he cannot impeach the title of Daniel Harker, under whom David Gustin held. If he entered as an intruder, or against the consent and without the permission of David Gustin, he may set up a title in himself; but he cannot set up an outstanding and subsisting title in a third person under whom he *did not enter. The policy of this rule serves to sustain and recommend it. It saves the proprietor from hazard and difficulty by collusive change of possession. The hope of *57 advantage being removed, temptation is avoided. It gives to possession its legitimate influence against every one who has not a title. Possession ought to prevail not only against him who enters without professing to have title, but him also who may pretend to have title which, on investigation, is found worthless. The possession in an action of ejectment is a matter of so much importance, and when available, is so efficient a protection until a prima facie valid title is shewn, that the law wisely does not suffer it to be lightly changed, and does not permit such an advantage to be gained, either by collusion with a tenant, or by intrusion upon him. He who fraudulently or wrongfully takes the place of my tenant, or of one who holds at my will and cannot controvert my right, shall not expose me to the anxiety and labor and expense of shewing a strict title, or triumph in his fraud or wrong, because some third person has a better title. Against all the world but the legal proprietor, my possession shall save me.
A reference to a few cases will support the principles I have stated.
In Lessee of Cooper v. Galbraith, 3 Wash. 549, Judge Washington ruled that a man cannot recover in ejectment nor defend himself against his own covenant or grant. He is estopped from saying his title was defective, when his deed professes to pass a good title. So a man will not be permitted against his own act, though not by deed, to controvert the title which he has thus acknowledged; as if one man come into possession of land by permission of another, he thereby admits the title of that other, and in an ejectment to recover back the possession, he cannot question it. In illustrating his principle by apposite cases, the learned judge says, “In an ejectment by the lessor against his lessee, or any person claiming under the lessee, the defendant will not be allowed to set up a defect in the title of the plaintiff, or to shew an outstanding title in a third person.” In Brandler v. Marshall, 1 Caines 401, the court said, *58 “When, a person enters under another, and transfers the possession, his grantee is supposed to hold under the same title.” In Jackson *v. Harder, 4 John. 210, Kent; C. J. for the court said, “ The plaintiff shewed enough in the first instance, to entitle him to recover. He shewed a possession of eight or ten years under a claim and color of title. It is. clear, beyond all doubt, that Baker, wdio entered and held under the plaintiff (by a contract of purchase), would be concluded from setting up an adverse title, and any person who succeeded to the possession under Baker, would be equally concluded. In what way the defendant succeeded to the possession, does not appear. It is not stated or alleged, that he entered under any pretence or color of title, and the natural and just inference seems to be, that he entered upon the possession which Baker had left as an intruder, without title. In that case, the possession of the plaintiff was sufficient to entitle him to recover, and the entry of the defendant must be considered as a trespass. The defendant is either such an intruder, or he entered under Baker, and in either case, he is precluded from questioning the plaintiff’s right of possession. Baker entered and held for years under Duncan and Campbell, and they and their heirs are entitled as against him and as against all persons who came in under him, or who entered as intruders upon a possession which he left, to place themselves in statu quo, by regaining the actual possession which they had parted with to Baker, upon the faith of a contract.” “But,” says the judge, “ the defendant set up and offered to shew an outstanding title in some third person. The first question is, whether' a mere intruder can be permitted to protect his intrusion under an outstanding title in a stranger ? I think not. The rule has never been carried so far, and it would be a violation of just principle to apply it to the case of a trespasser who enters upon another’s possession, without pretence of title.” In Jackson v. Bush, 10 John. 233, the court said, “The rule excluding a defend *59 ant against whom there has been a judgment and execution, from defeating the purchaser’s recovery of his possession by setting up a title in some third person, is founded in justice and policy, and the reason of the rule equally applies when such defendant has'in the meantime delivered up the possession to another. He shall not be permitted to do indirectly and through the agency of another, what the law will not suffer him to do himself.” In Jackson v. Walker, 7 Cowen *637, one Storm, went into possession of the premises under an agreement to purchase of Livingston, the lessor of the plaintiff, and after some time, went to Ohio, leaving his wife in the occupation of the lot. Garnsey claiming adversely to Livingston, commenced an ejectment against Storm. .He then entered into a negotiation with Storm’s wife, said he had a valid deed, and desired the possession merely. The wife left the farm, Garnsey entered and placed the defendant there. A witness testified, he had heard Garnsey say, he had given Mrs. Storm ten dollars for giving him the possession, or leaving the possession of the lot. The court after a review of the law and facts, say, “ The plaintiff was entitled to the benefit of Storm’s possession thus acquired by the defendant. It is alike the dictate of justice as of law, that the defendant restore it, before he can be permitted to shew title in himself or an outstanding title in another.” Similar doctrine is laid down by a distinguished member of the Court of Errors of New York, in Schauber v. Jackson, 2 Wendel, 62. In Stahle v. John. 8 Serg. & Rawle, 326, the court said, the tenant cannot set up a title against his landlord; so neither can the real owner, to whom the tenant treacherously has delivered up the possession. In Saunders v. Annesly, 2 Sch. & Lefr. 103, Lord Chancellor Redesdale said, “ When possession is gained under a contract, by a person having a right, he can only have it such as the person has it from whom he obtains the possession, and is bound to accept the possession according to that right; and if that other person has but a chattel *60 interest under a disseissor, he, the person entering, can have no more than that chattel interest; and that because, according to the expression in the bqoks, it was his folly to take possession in such manner, instead of recovering it by lawful means.”
The view I take of this case renders it unnecessary, in my opinion, to examine the recondite argument of one of the defendant’s counsel, to prove that David Gustin was not seized to an use, and therefore could not convey by deed of bargain and sale. Whether so seized or not, the deed, as against him, is to be held to convey what it purports to do. One of the defendant’s counsel insisted, the judge should have put it to the jury to decide in what manner John. Gustin came into possession, whether under the tenant or not, whether by collusion with him or *not. I cannot admit the necessity of making, in this case, such a question of fact to the jury. There were, in truth, no controverted facts. The law upon’the facts was the only necessary direction to the jury. And if I am right in the principles and cases I have mentioned, whether the defendant came in under the tenant, or by collusion with him, or as an intruder on him without title, the result is the same.
Another ground for new trial stated, though not pressed much at large, was, surprise. The defendant and his counsel were surprised to find the alleged deed from Margaret Eoy to Joseph I. Eoy, was not regularly proved, nor lawfully recorded, and therefore not admissible in evidence. The fact of surprise, is not made out. There is no proof, and without it, I should be slow and loth to believe, that the highly respected counsel who prepared for trial and tried this cause on the part of the defendant, had not sought after, or seen, or known the situation of a document so vitally important to the title and defence of their client, the very corner stone of his claim, until they had occasion to offer it on the trial. If, however, such be the truth, it affords no claim for a new trial.
*61 It was said that this is an extraordinary recovery; that the plaintiff rested his case without going into any evidence to shew liow the defendant came into possession of the premises; the defendant shewed it, and the plaintiff claims to rely upon it, in aid of his recovery. It may indeed be somewhat unusual for a defendant to cure the defects of the plaintiff instead of availing himself of them. But it cannot be questioned, that the plaintiff may serve himself of the proof of the defendant, and that the court and jury are bound to respect the truth, from whichsoever quarter it may come.
There is, in my opinion, no cause to disturb the verdict.
In the course of these remarks I have said that John Grustin had no title; that Margaret Boy remained seized until her decease; and that by her will, the premises were devised to her daughter. To avoid misconception, I repeat, that these conclusions are drawn solely from the case as it now appears before us. The omissions which occurred on the trial, may, perhaps, on some future occasion, be so supplied, as to present a very different result.
Ford, J. and Drake, J. concurred.