Dozier *vs.* Joyce.

DOZIER *vs.* JOYCE.

8p 303
95 480

1. Every court of justice, of necessity has the power, whilst the papers of a cause are *in fieri*, to supply a loss occasioned either by accident or design.

2. Where the commissioner, appointed to take a deposition, has omitted to certify it by his signature, the deposition cannot be read in evidence; but the omission of the seals will not operate to exclude the depositions.

3. Where a point reserved for the determination of the Supreme court, will with equal propriety admit of a construction which will support or defeat the judgment of the court below—the former will be adopted as the true construction. The party wishing to avail himself of an alleged error in the judgment of an inferior court must reserve the point, and present it on the record with reasonable certainty.

4. A decision on the probate of a will, is a judicial proceeding, and the court in which it is registered is a court of record, and if the presiding judge is also clerk of the court, he has authority to test the records of his court in both capacities.

5. All courts in the United States, take judicial notice, that tribunals are established in the several States, for the adjudication of controversies, and the ascertainment of rights.

6. The certificate and seal which gives verity to a record, unless the record itself discloses the want of jurisdiction, establishes as well the right of the court, to adjudicate the matter contained therein, as that such facts were adjudicated.

7. A witness cannot be examined to any distinct collateral fact, for the purpose of impeaching his testimony afterwards:—But if the witness voluntarily swears falsely in relation to matters not within the issue, he may be impeached by contradicting him.

8. A defendant in trover, may defend himself, by shewing title in a third person, and so also may a defendant in detinue.

Dozier *vs.* Joyce.

9. But a mere trespasser cannot set up an outstanding title in a third person, without connecting himself with it.

Error to the Circuit court of Autauga.

Detinue, tried before Judge *A. Martin.* Plaintiff declared against defendant in detinue, for several slaves which defendant had taken from the possession of plaintiff and unlawfully detained. Plea—*non-detinet.* Verdict and judgment for plaintiff.

On the trial of the cause, the plaintiff proved that he acquired the possession of the slaves, the subject of the controversy, on his intermarriage with one A R in South Carolina, in the year eighteen hundred and thirty-two. On first January, eighteen hundred and thirty-six, defendant seized and took said slaves from the agent of the plaintiff without authority. The slaves had been demanded of the defendant, and he had refused to deliver them.

Defendant introduced a deed of gift from A. R., conveying to her infant daughter, Elizabeth A. M. Ramsey, the slaves (and divers other property) the subject of the suit. The marriage with plaintiff took place about three weeks subsequent to the execution of the deed, and the execution of the deed, and the intended marriage, were spoken of before the marriage in the neighborhood.

The deposition of a witness was offered in evidence by defendant, to which plaintiff objected on the grounds:

1. That the affidavit on file in the clerk's office, to obtain the commission to take said deposition, was without the attestation of the clerk—nor did it appear by any certificate of the clerk, that the same had been sworn to.

Dozier *vs.* Joyce.

2. That the commissioners who took the deposition did not certify the same under their hands and seals.

On the first point, the court decided that the clerk might then be sworn, and state whether or not the affidavit had been duly made and sworn to, at the time the commission issued—to which plaintiff excepted. The second objection was sustained by the court, and the testimony rejected, to which defendant excepted.

Plaintiff offered in evidence, a paper purporting to be a transcript of the last will and testament of J. R., deceased, of Greenville district, South Carolina, (said J. R. was the former husband of A. R.,) by which the property was bequeathed to A. R. for her life, and to her daughter after the death of said A. R. The will was certified to be a true copy, by the ordinary of the district, who was both judge and clerk of the court. Defendant's counsel objected to the transcript, and the endorsements, going to the jury, as evidence, but the objections were overruled by the court, to which defendant excepted.

Plaintiff introduced evidence of a conversation, between one Tandy Walker and the plaintiff's wife, which was objected to by defendant, but was permitted to go to the jury by the court, for the purpose alone of impeaching the testimony of one of defendant's witnesses, who was proven to have been present, but denied having heard any such conversation—To the admission of this testimony, defendant excepted.

After the trial had progressed some time, it was ascertained that the writ and declaration were lost, although the declaration had been in the hands of the jury, and all the papers had been before the court, some time after

8 P.          39

the trial had commenced.    Plaintiff moved the court for leave to substitute a new writ and declaration, which was permitted by the court—to which defendant excepted.

The court charged the jury, that if they believed that said deed was made on the eve of an intended marriage, and without the knowledge of the plaintiff, it was a fraud on his marital rights, and void, so far as the plaintiff was interested—to which defendant excepted.

The court further charged the jury, that if they believed that the plaintiff had been in peaceable possession of the property, for more than three years; that a tortious taker could not avail himself of a better title in a third person—to which defendant excepted.

The following is the certificate of the ordinary, endorsed on the will received in evidence:

"South Carolina : Edgefield district.   I, Oliver Towles, ordinary of the district aforesaid, do certify, that the foregoing pages contain true copies of the will," &c.— "that by the laws of the State, I, as ordinary aforesaid, am keeper of all books, papers and records, relating to the office of ordinary, or to the probate of wills, administration, &c., and am also sole judge of the court of ordinary, for the district aforesaid, subject to appeal to the court of common pleas; and that this certificate is in due form of law, and by the proper officer.

"Given under my hand and private seal, (there being no seal of office,) at Edgefield, this 28th day of March, A. D. 1837.          OLIVER TOWLES, O. E. D. [seal."]

"The State of South Carolina.   I, the the undersign-ed, Baylis J. Earle, one of the circuit judges of the Su-

Dozier *vs.* Joyce.

perior court of law, and a presiding judge of the district of Edgefield, do hereby certify, that Oliver Towles, who hath signed the within certificate, is, and was at the date thereof, judge and register of the court of ordinary, for the said district of Edgefield, having jurisdiction of the probate of wills, and the granting of letters of administration, on the estates of intestates, and of the accounts of executors and administrators; and also having the lawful custody of the records appertaining to the said court of ordinary:—That his certificate above is in due form, and entitled to full faith and credit.

"Given under my hand, this 29th day of September, 1837.                                    B. J. EARLE."

The following errors were assigned:

1. The court below erred in allowing a new writ and declaration to be substituted, as shewn by the bill of exceptions.

2. The court erred in the several instructions or charges given to the jury, on the trial of the cause, which are stated in the bill of exceptions.

3. The court erred in permitting the evidence to be given to the jury, of a conversation between the wife of the plaintiff in the court below, and Tandy Walker.

4. The court erred in admitting a transcript of the will of the former husband, of the wife of plaintiff, as evidence.

5. The court erred in rejecting the deposition, offered during the trial of the cause, by defendant below.

6. The record shews no declaration, writ or plea.

*Parsons*, for the plaintiff in error.
*Dargan & J. B. Clarke*, contra.

Dozier vs. Joyce.

*Parsons*, for the plaintiff in error, contended—

1. That defendant in detinue may prove title in a third person—(2 Stark. Ev. 494; 14 J. R. 128; 11 J. R. 529, 300; 1 Wash. R. 308; Carroll vs. Pathkiller, 3 Por. R.; 3 Stark. (trover) 1504.

2. That a widow about to marry, may give part of her property to her child by the first husband—(2 Porter's Rep. 527; 1 Vern. Rep. 408; 2 P. Williams' Rep. 674; 2 Brown's Ch. Rep. 345; 2 Des. Rep. 264; Sug. Vend. 459; Harper's Ch. Rep.)

3. Where the pleadings are lost, copies on *affidavit* should not be received—(1 Stark. R. 187.)

4. The court should not permit a witness to be contradicted on an immaterial or collateral point, to discredit him—(3 Stark. 1754, top; same vol., note 1, page 1739.)

ORMOND, J.—The questions of law arising out of the record, in this cause, will be considered in the following order:

1. Had the court the power to substitute copies of the writ, declaration and pleas in the cause, on an affidavit of their loss during the trial of the cause?

2. Was the court correct in rejecting the deposition of Lucretia Thompson?

3. Did the court err in permitting the transcript of the will of John Ramsey, deceased, to be read in evidence to the jury?

4. Was the objection well taken, to the evidence admitted by the court, to impeach the testimony of one of the witnesses of the plaintiff in error?

5. Did the court err in charging the jury, that if the negroes sued for had been in the peaceable possession of the plaintiff, that a wrong-doer could not avail himself of a better title in a third person?

Every court of justice must of necessity have the power, whilst the papers of a cause are *in fieri*, to supply a loss occasioned either by accident or design. If this were not *so, its progress could be* stopped at any time, by the wilful abstraction of part of the papers of a cause from the files, or by a casual loss. consequent on the hurry and confusion of a *nisi prius* court. This is a conservative principle, which must inhere in all courts; and in its application, is analagous to the familiar rule of evidence, authorising the reception of secondary proof, when the best evidence cannot be had. The records of the court being the highest grade of evidence, can in general be proved only by themselves; whether there may not be cases, when even this rule might yield to stern necessity, it is not necessary now to determine, as the papers permitted to be substituted in this case, were not records.

It was strenuously urged by the plaintiff's counsel, that in every case in which secondary evidence of a written instrument is received, an opportunity is afforded the adverse party, of questioning its loss, and disputing the truth of the secondary proof, which was not permitted in this case, as the judgment of the court was *ex parte.*

The answer to this objection is, that the whole matter passed under the eye of the court. The presiding judge was certified of the former existence of the papers, not only from their having been read to the jury, as in

this case, but also from the memorials extant on the docket, and minutes of the court. The adverse counsel were present, and if any attempt had been made to foist into the cause untrue copies of the lost papers, the attempt could be resisted by counter affidavits, in which event the court would require the most plenary proof. In this case, the opposing counsel did not even suggest that the substituted papers were not substantially correct; we cannot therefore doubt, that the court was right in receiving them.

It has been determined by the Supreme court of New York, that a writ of *fieri facias*, after it had been levied and accidentally destroyed by fire in the officer's house, that the lost paper could be replaced by a copy—(3 John. Rep. 418; White. vs. Lovejoy; see also 2 Burrow's Rep. 1072; 4 Term. Rep. 514.)

The objection to the reading of the deposition of Lucretia Thompson, is so inartificially presented, that we are unable to say what point was intended to be raised for revision in this court. It is uncertain whether the objection was, that the commissioners who took the depositions, did not certify it by their signatures, or that their certificate was not sealed. If the former was the alleged defect, it was sufficient to exclude it; if the latter, it was not. When a point, reserved for the determination of this court, will with equal propriety admit of a construction which will support or defeat the judgment of the court below, we must adopt the former as the true construction. The party who wishes to avail himself of an alleged error in the judgment of an inferior court, must reserve the point, and present it on the record with reasonable certainty.

Dozier *vs.* Joyce.

The objection to the introduction of the transcript of the will of John Ramsey, is founded on the supposed insufficiency of the certificate of the clerk. · It is in these words:

"South Carolina: Edgefield District.

"I, John Towles, ordinary of the district aforesaid, do certify, that the foregoing sheets, &c. &c.—that by the laws of the State, I, as ordinary aforesaid, am keeper of · all books, papers and records, relating to the office of ordinary, or to the probate of wills, administration of estates, or accounts of executors and administrators, and am also sole judge of the court of ordinary for the district aforesaid, subject to appeal to the court of common pleas; and that this certificate is in due form, and by the proper officer. Given under my hand and probate seal, (there being no seal of office.")

The act of Congress of seventeen hundred and ninety, providing for the authentication of the records and judicial proceedings of the courts of any State, by the attestation of the clerk with the seal of the court annexed, together with the certificate of the presiding judge, must be held to reach such a case as this, or it is not provided for; as the act of eighteen hundred and four, for the authentication of records, not judicial proceedings, will not apply. The decision on the probate of a will is a judicial proceeding, and the court in which it is registered, a court of record, and if the presiding judge is also clerk of the court, he must have authority to attest the records of his court in both capacities. ·This has been done in this case.

In the case of Bessell vs. Edwards, (5 Day's R. 368,) it

Dozier *vs.* Joyce.

was held, that when a justice of the peace holds a court of record, and has no clerk, he may certify these facts: that there is no seal, and that his attestation is in due form, and that a record thus certified, would be evidence in another State.

So, in the case of Huff vs. Campbell, (1 Stewart, 543,) it was held, that a certificate made by one of the judges of the Supreme court of Tennessee, certifying that an individual was clerk of that court, was sufficient, notwithstanding the act of Congress requires such certificate to be made by " the judge, chief justice, or presiding magistrate"—it appearing from the law of Tennessee, that there was no chief justice or presiding magistrate of that court.

It was also objected, that it did not appear, that by the law of South Carolina, wills are required to be proved and recorded. All courts of the United States take judicial notice, that tribunals are established in the several States, for the adjustment of controversies and the ascertainment of rights.

Some tribunal must necessarily be charged with the duty of proving and recording wills and testaments; and it might as well be demanded in any case where a record of another State is offered in evidence, that the law creating the court and defining its powers, must be produced, as in this. The certificate and seal, which gives verity to the record, establishes as well the right of the court to adjudicate the matter contained therein, (unless indeed the record itself discloses the want of jurisdiction) as that such facts were in truth adjudicated.

It follows, that the court did not err in admitting the transcript.

The objection taken to evidence admitted to impeach one of defendant's witnesses, is thus stated in the bill of exceptions: "The plaintiff introduced evidence of a conversation between one Tandy Walker and the plaintiff's wife, which was objected to by defendant's counsel, but was permitted to go to the jury by the court, for the purpose *alone* of impeaching the testimony of one of defendant's witnesses, who was proven to have been present, but denied having heard any such conversation."

It is insisted by the counsel for the plaintiff, that the court permitted the testimony of the witness to be impeached, by proving that he had sworn falsely, in a matter not material to the issue. It is not easy to ascertain from the record, what point was really intended to be presented. What influence the conversation between Tandy Walker and the plaintiff's wife could have in the cause, or whether it was material to the issue or not, is difficult to say, without knowing what the conversation was, and under what circumstances it took place. Still less can it be ascertained from the record, whether the witness thus sought to be impeached, had voluntarily denied having the conversation, or whether it was brought out by the cross-examination of the plaintiff.

The rule is, that a witness cannot be examined to any distinct collateral fact, for the purpose of afterwards impeaching his testimony by contradicting him. But if a witness voluntarily swears falsely in relation to matters not within the issue, we can see no reason why he should not be impeached by contradicting him. The reason for the former rule, usually given, that the witness cannot be presumed to come prepared to defend

Dozier *vs.* Joyce.

himself, on such collateral matters, fails, when the testimony is voluntarily given, or not objected to.

In the case of Carlos vs. Brook, (10 Vesey, jr.) in treating of this subject, Lord Eldon says, "It was not at all put in issue whether he (the witness) had been insolvent, or had compounded with his creditors ; but having sworn the contrary, they proved by witnesses, that he who had sworn to a matter not in issue, had sworn falsely in that fact, and that he had been insolvent and had compounded with his creditors, and it would be lamentable if the court could not find means of getting at it, for he could not be indicted for perjury, though swearing falsely ; the fact not being material—(See also Purcell vs. McNamara, 8 Vesey, jr. 324 ; Tucker vs. Welch, 17 Mass. 160 ; Staple vs. Spohn, 8 Serg. & Rawle, 317.)

In this case, from the construction we put on the bill of exceptions, it appears that the objection was not that the witness was compelled to answer to collateral facts, but to the right of the opposite party to contradict him, by showing that he had not sworn truly. From what has been said, it appears there was no error in this.

Could the defendant below protect himself by proving a better title in a third person?

That in the action of trover, the defendant may defend himself by showing title in a third person, is a rule frequently laid down in general terms in the books. To that effect are the cases cited by the plaintiff's counsel—(Schermerhorn vs. Van Volkenburg, 11 Johnson's Rep. 529, and Rotan vs. Fletcher, 15 Johnson's Rep. 207.)

The action, in this case, is detinue ; but it is not perceived that any substantial distinction exists between

Dozier *vs.* Joyce.

the two actions as to this question. A general or special property in the chattel sued for, is sufficient to maintain either action.

No case has been cited to sustain the position of the plaintiff's counsel, that a mere trespasser can in either action set up an outstanding title in a third person, without in some way connecting himself with it. The contrary, however, has been held in the case of Duncan vs. Spear, 11 Wend. R. 54. In that case, it was determined that a mere prior possession obtained by a purchase under a void execution, was sufficient to prevent the defendant from setting up a title in a third person, without shewing some claim, title or interest in himself.

The court, in delivering their opinion, refer to the case of Daniels vs. Bell & Brown, decreed in the same court a few years before, in which the same principle was asserted.

The two cases from 11 and 15 Johnson's Reports, are briefly reported, but it appears in both cases that the defendant's came lawfully into possession, which materially distinguishes those cases from this. In this case, the defendant obtained the possession of the slaves by his marriage. They are tortiously taken from him by the plaintiff, without color of title on his part, or in any manner connecting himself with the title. To permit such a defence to prevail, would be to encourage violations of the law.

The argument most relied on by the plaintiff's counsel, and therefore deserving an answer, is, that if this recovery is allowed against the plaintiff, he cannot afterwards protect himself by the judgment, if sued by the

Dozier *vs.* Joyce.

true owner. If it were true, that by his tortious act he has subjected himself to two actions, he certainly cannot found an argument on that fact, for his impunity, when sued by one whose possession he has invaded. But we do not see that this consequence follows.

The defendant, as husband, became entitled to all the personal property of the wife, in her possession at the time of the marriage, and may hold it until a better title is asserted. Having, then, the right to the possession, he has a right to recover for an injury done to it; and if the daughter of the wife, by virtue of the anti-nuptial gift, should hereafter assert and maintain her title to the property, it is not easy to conceive on what principle she could recover of the plaintiff in error, for an injury done to the possession, at a time, when that possession lawfully belonged to another, and for which injury, compensation had been made.

The view we have taken of this point of the cause, renders it unnecessary to consider whether the court decreed correctly as to the legal effect of the deed made by the wife of the defendant, a short time before the marriage to her daughter. Even if the decision of the court, that such a conveyance on the eve of marriage, without notice to the husband, is a fraud on his marital rights, and therefore void, *per se*, was wrong, it could not by possibility prejudice his rights, as the court had previously decided right, on a point which was decisive of the case.

The judgment is affirmed.