## ROBERTS v. TRAWICK.

1. In a contest about the validity of a will, the declarations of an executor having no interest under the will, cannot be given in evidence.

2. When a will is propounded to the orphans' court for probate, and is there contested, the admissions, or declarations, by one of several legatees of the unsoundness of the testator's mind, or that fraud, or undue influence was practised upon, or exercised over him, cannot be received to invalidate the will, to the prejudice of the other legatees.

3. If at the time of making a will, a testator is of sound mind, proof that twelve years before he had made a will, making a different disposition of his property, is irrelevant.

4. The declarations of the testator, made before, and at the time of the execution of the will, or so shortly thereafter as to form a part of the *res gestae*, and necessarily connected with it, may be received, to prove fraud or undue influence, in its execution.

5. Where a witness will receive a greater share of the estate by defeating the will, than he would take under it, he is incompetent from interest to testify against its validity.

6. Proof that one named as an executor in the will, refused to take upon him its execution, is wholly irrelevant.

7. Upon a question of sanity, opinions of the capacity of the testator can only be given, when preceded by the facts, or circumstances, upon which they are based; and can only be given by those whose long intimacy, and familiar and frequent intercourse with the deceased, qualifies them peculiarly to detect any mental alienation.

8. Testimony conducing to prove the unnatural character of the will, is admissible—as, that it deprived the most unfortunate of the testator's children of any participation in his bounty—or, that the testator was old, was in feeble health, of weak mind, or was prejudiced by his wife against his children.

9. An executor offering a will for probate, cannot take a non-suit.

Error to the Orphans' Court of Tuscaloosa county.

THIS was a proceeding had in the orphans' court of Tuscaloosa county, to try the validity of a will, which the plaintiff in error offered for probate, as the last will and testament of Nathaniel Davis, deceased. Citations were issued to the widow and heirs of the deceased; six of the latter contested

the will. The case was submitted to a jury, and a final trial was had on the 28th August, 1847, when the jury returned a verdict in favor of the contestants. Thereupon the court adjudged the said instrument not to be the last will and testament of the deceased, and gave judgment for the costs against the said Roberts. By the will, the testator, after providing for his funeral expenses, bequeaths to his wife, Elizabeth Davis, all his ready money, household and kitchen furniture, and a negro girl, Harriet, and her future increase, to be disposed of at her pleasure. Also, three boys, Charles, Jacob and Logan, and after her death or widowhood, bequeaths Charles to Willis Davis ; Jacob to Richard Davis ; and Logan to Oliver P. Davis, three sons of testator. He further gives to his said wife full possession of all his lands and plantation, farming tools, &c. &c., with three head of farm horses of her choice ; a negro boy, Tillman, and negro woman, Fillis, and her future increase, during her natural life, or widowhood, and after her death, said last named property to be sold on a credit of twelve months, at public sale, and the proceeds equally divided between his three sons, Willis, Richard and Oliver P. Davis. He then proceeds to give to Arthur Davis, his son, of Georgia, five dollars. To his daughter, Nelly Trawick, wife of Hugh Trawick, twenty-five dollars. To his daughter Malinda Ray, wife of Duncay Ray, the sum of $25. To Palatine Rice, another daughter, and wife of Jeptha Rice, the sum of $25. To his daughter, Margaret Middleton, wife of Benjamin Middleton, $25. To his daughter, Sarah Stanley, wife of Daniel Stanley $25. All of which sums are to be paid out of the proceeds of the sales of his perishable property. The balance of his property he desires to be sold, and he bequeathed the residue, after the payment of his debts, to his three sons, Willis, Richard, and Oliver. The will appoints James W. Roberts, the plaintiff in error, and John Freeman executors, and bears date the 22d September, 1846. Upon the trial, several bills of exceptions were sealed, from which it appears, that the said executor, the plaintiff in error, introduced, and proved by the subscribing witnesses, the formal execution of the will, in their presence, by the testator. That in their opinion, the mind of the testator, at the time of its execution

was good for a man of his age, he being between seventy-five and eighty years old. That he had nine children, five daughters and four sons. That at the time of the execution of said will by him, he appeared to act without restraint, or influence of any person, and that he did it cheerfully. One of said subscribing witnesses was asked by the contestants, on croos-examination, to state the pecuniary condition of the daughters of the deceased. Plaintiff in error objected, but his objection was overruled, and the witness was allowed to state that the daughters were poor, except Mrs. Trawick, who was only in moderate circumstances.

The court permitted one Whitson to testify, against the objection of the plaintiff in error, that some twelve years past, said deceased made a will, to which he was a subscribing witness; that since this contest commenced, he being summoned as a witness, Mrs. Elizabeth Davis, the widow of the deceased, asked him, witness, what he knew about the will, and upon his speaking of the old will, she (alluding to a rumor which said the old will had been found) told Whitson, the witness, he had better mind how he swore about that will, for she had burned it in that fire-place, pointing towards the hearth. Whitson was then permitted, notwithstanding plaintiff's objection, to state the contents of the old will, which, as well as he remembered, made an equal division of the property among all the children except one, for which exception testator gave witness a reason, the portion given to his daughters being limited to them and the heirs of their bodies.

Contestants further proved, by one A. C. Trawick, son of one of the contestants, that the deceased told him, after the will purports to have been executed, that it was a fair and equal will, and that the statement that the will only gave $25 to each of the daughters, was false. This proof was objected to by plaintiff in error, and his objection was overruled by the court.

Contestants then proved, against plaintiff's objection, that the said Freeman, named in the will as one of the executors, refused to act as executor of the will.

They next proved, (the plaintiff excepting,) by one Prewitt, that Roberts, the executor, told him that he did not

think they would break the will, but that it might be broken if they knew how to get at it. The contestants offered John Willingham as a witness; the plaintiff objected to his competency, as it appeared he was the brother of Mrs. Davis, the widow of the deceased, she having departed this life intestate, since the death of her husband, leaving no children. The court held the witness competent, and he testified that in a conversation with the testator, a short time before he made the will offered for probate, he said to witness, "John, all some folks talk about is a will, a will, a will, but the laws of Alabama make a will good enough for me." The admission of this proof was also objected to by plaintiff in error. Said Willingham was further permitted to testify, against plaintiff's objection, that soon after testator's death, Mrs. Davis, the widow, having heard that the plaintiff in error and Willis Davis had been to see witness, sent for him and asked him what said Roberts and Willis Davis had been to see him about—that he replied, "they came to talk with me about what they should do with your money," alluding to the money left her by the will. That Mrs. Davis said, "What have they to do with my money?" Witness replied, "Roberts is executor to the will." Mrs. Davis said, "He the executor! Roberts states falsely—he is not executor. The will appoints no executor. The old man would not have trusted him for five dollars."

The contestants offered to prove by the deposition of Nancy Willingham, that Mrs. Davis, the widow, a short time after the death of testator, said to her, that she did not intend to break the will of Nathaniel Davis, for it was made just as she wanted it to be made. Witness observed, there had been a previous will, by which the old man Davis nearly equally divided his property among his children. Mrs. Davis replied, "Yes, and I laid it in the fire." This proof was objected to by the plaintiff in error, but allowed by the court.

It was further urged as an objection to the competency of Willingham, that he would take a larger interest under the statute of distributions, than he would under the will. The only witness who testified on this point stated, that making a single guess, the estate, exclusive of the debts due from it, was worth something like twenty-five thousand dollars. The

orphans' court regarded this as too uncertain an interest to exclude the witness, but ruled that it went to his credibility only.

Contestants were allowed to prove by one Nancy G. Freeman, against plaintiff's objection, that she, the witness, passed by the house of the testator in September before testator died, (which was in January, 1848,) and she inquired of Mrs. Davis, his wife, how he was. She replied, that he was out of his senses on Thursday before the inquiry, and that she had sent for Roberts and made his will, and that he was not much better at the time of the conversation. Witness inquired of Mrs. D. who were the witnesses to the will. She replied that Monday evening was the time when the will was to be witnessed. To the admission of this as testimony, Roberts excepted. The contestants offered the deposition of one James Middleton, which was objected to by plaintiff, but allowed. He proves that about the middle of December, 1846, he had a conversation with Roberts, the executor, concerning the will. Roberts informed him that he wrote it. That it was not true, as reported, that deceased had only willed his daughters twenty-five dollars each. Said the old man, Davis, had made a pretty equal division of his property among all his children, &c. The plaintiff in error, upon a rebutting examination of a witness, after having proved two or three facts by him, for the purpose of showing the soundness of the testator's mind, asked him to state his opinion as to the soundness, or unsoundness of the mind of deceased. This proof was excluded by the court, and the witness was confined to a statement of the facts.

Plaintiff in error offered one Griffin as a witness, who was objected to on the ground of interest, it appearing that he had married and had children by a sister of Mrs. Davis, the widow of testator and legatee under the will—Mrs. Davis having died without issue, and her said sister being now alive. This witness was excluded. The court also refused to permit said witness to prove that his wife would get a larger portion under the statute of distributions than under the will. Plaintiff offered to pay Griffin the amount to which he was entitled under the will, which the court refused. He then offered to prove to the court, in order to remove the ob-

jection to Griffin's testimony, the value of the property of the estate, and of that which testator had advanced to his children, and which might be brought into *hotch-pot*. The court declined to hear this proof, unless it should be accompanied with proof of the amount of debts due from said estate, or by some means show what would be the amount for distribution after settling up the estate.

The plaintiff offered a deposition of another witness, Harriet McFarland, who testified to a conversation she had with Mrs. Davis in October, 1846, in which she (Mrs. D.) said she would be glad if Mrs. Ray, the daughter of testator, was as well provided for as the boys; that she had been a dutiful child. This conversation related to the will. At the same time, she saw and conversed with said Nathaniel Davis. She saw no foolish act, nor heard any foolish expression. That Mrs. Davis did not control him more than was common in the relation of husband and wife. That she believed he was of as active mind as any man of his age. This deposition was excluded, upon the motion of contestants.

The plaintiff offered the deposition of Rebecca Appling, in which she deposes to a conversation which she had with the testator some four years before, in which he declared that two of the contestants, Trawick and Rice, should not have one cent of his property. That there was one way to prevent it, and he intended to do it. Says she "frequently visited the house some four years since—was intimate in the family, and does not think Mrs. Davis controlled deceased. That he was a man who acted pretty much as he pleased about his affairs." The contestants objected to that portion of the deposition, which speaks of the witness's opinion as to the control of Mrs. Davis over her husband, and the habit of the testator in acting as he pleased, &c. The court sustained the objection, and excluded that part of the deposition.

Plaintiff offered the deposition of Susan Willingham, in which she details a conversation between herself, Mrs. Roberts and Mrs. Davis, at the residence of deceased, which took place the week preceding 25th December, 1846. Mrs. Davis said, (speaking of the will,) "things are not as she wished to have them, but she could not have her way. That she had

10

been well acquainted with testator for many years, and saw no change in his manner or mind, and that he seemed at the time of this conversation to be as clear-minded as he ever had been since her acquaintance with him, but he was very weak and feeble from sickness. The court ruled out, against plaintiff's objection, so much of the deposition as relates to conversations with Mrs. Davis, and witness's opinion as to the condition of decedent's mind.

After the proof had all been introduced except one witness, on the part of plaintiff in error, he proposed to take a non-suit, and take the case for revision to the supreme court. This the court refused to permit, and the plaintiff excepted.

After the jury had retired, they returned and asked of the court further instructions as to the statements proved to have been made by the plaintiff, Roberts. The court charged them, if Roberts had stated that the will gave to each of the daughters more than five dollars, this was an unfair statement, and that they might infer from this that he was guilty of other unfairness ; but that they should take the whole testimony together, and give it such weight as they thought it was entitled to. This charge was not excepted to until after the jury had returned their verdict.

The plaintiff in error, having excepted to the various decisions of the orphans' court, in the rejection of the proof offered by him, and in admitting the proof objected to by him, assigns the same for error in this court.

PORTER & BRODIE, with whom was S. D. MOORE, for the plaintiff in error.

The court erred in admitting proof of the following matters :

1. The pecuniary condition of the testator's daughters. Jackson v. Betts, 9 Cowen, 208.

2. That testator made a will twelve years ago. Davis and wife v. Vancleve, (3 Pet. Dig. 704) 4 Wash. C. C. Rep. 262.

3. Mrs. Davis's declaration in regard to destruction of old will ; also her declaration that Roberts was not executor ; also that testator was not of sane mind one day about four months before he died ; also that this will was made just as

she wanted it. Mima Queen v. Hepburn, (2 Pet. Dig. 225) 7 Cranch, 290; Boyd v. Ely, 8 Watts, 66; Bovard v. Wallace, 4 Serg. & R. 499; Nussear v. Arnold, 13 Id. 323.

4. Contents of the old will, when its destruction had not been proven. 18 Pick. 379.

5. Declarations of Roberts, the executor, in regard to the will. Morgan v. Patrick & Smith, 7 Ala. R. 185; Copeland, et al. use, v. Clark, 2 Id. 388; Chisolm, use, &c. v. Newton, et al. 1 Id. 371.

6. That the other executor had refused to act; such testimony being irrelevant, and even if it was not, this is not the best evidence the fact admitted of.

7. The court erred in allowing John Willingham to testify, as he was seeking to set aside the will, if he succeeded in doing which, he would get a larger share of testator's property than would come to him should the will stand.

8. The court erred in admitting proof of the declaration of testator, made some time before the making of this will, as stated by John Willingham. Jackson v. Kniffen, 2 J. R. 31; Smith v. Fenner, (3 U. S. Dig. 685,) 1 Gallis. 170; Davis v. Vancleve, 4 Wash. C. C. R. 262.

9. The court should have allowed an opinion of the strength of mind of the testator, based upon facts, especially that of witnesses so well qualified to judge as Poe and Mrs. Appling. Massey v. Walker, 10 Ala. R. 290; Bowling v. Bowling, 8 Ala. R. 541; Rambler v. Tryon, 7 Serg. & R. 90, (3 U. S. Dig. 683.)

10. Griffin was a competent witness, as he would take more under the statute of distributions than he would under the will; at any rate the court could not determine he was testifying in his own favor.

11. A release of this witness's interest would have rendered him competent even had he before been incompetent. Hall v. Alexander, 9 Ala. Rep. 221; and 16 Serg. & Rawle, 198.

12. If Mrs. Davis's declarations were admissible when offered by contestants, they were also admissible for executor, especially when she takes less under the will than she would under the statute of distributions. The court struck out these declarations from Mrs. Appling's deposition.

13. The court erred in rejecting some of plaintiff's depositions and admitting other parts of the depositions of defendants, as disclosed by the bill of exceptions.

14. The court erred in its charge to the jury.

15. The court should have allowed a non-suit as plaintiff desired.   Stat. of 1845-6.


E. W. PECK, contra.

The plaintiff in error, claiming to be the executor of the last will and testament of Nathaniel Davis, deceased, presented a paper purporting to be the last will and testament of said deceased, for probate in the orphans' court of Tuscaloosa.

The defendants in error, claiming to be heirs at law, &c. of said deceased, resisted the probate of said paper as the last will and testament of said deceased, and insisted that the same had been obtained fraudulently and by the use of undue influence.

The deceased was an old man, approaching eighty years of age. Had been twice married. By his first wife he had nine children, four sons and five daughters. By his second wife, who survived him, he had no children.

Deceased left a handsome estate, all of which, except nominal legacies, was given to his wife and three of his sons, two of whom had married nieces of the second wife.

The plaintiff in error, who had also married a niece of the old woman, wrote the will, and proved its execution, and by it is made executor.

During the progress of the trial, a bill of exceptions was sealed by the judge, which shows some twenty odd objections made by the plaintiff in error, and ruled against him by the court, and the errors assigned present them all here for the consideration of this court.

The most prominent of these objections may be thus classified: 1. Declarations of the plaintiff in error, offered by the defendants to show that the will was fraudulently and unduly obtained, were admitted against his objection. 2. The declarations of the wife, offered and admitted for the same purpose, though objected to.

1. The declarations of the plaintiff in error were evidence in favor of the defendant, (1 Phil. Ev. 69,) because he was

the adverse party on the record, and liable for the costs in the event the will was rejected.   1 Phil. Ev. 90; 1 Greenl. Ev. § 171, 174; Atkins v. Sawyer, et al. 1 Pick. 192; Davis v. Calvert, 5 Gill & Johnson, 269, a strong case.

2.  The declarations of the wife were evidence against the plaintiff in error, because, though not named as a party on the record, yet she was a party really interested in the suit.  1 Phil. Ev. 90, 91, 92, 93, and cases referred to; 1 Greenleaf Ev. § 690; look at 8 Greenl. Rep. Ware v. Ware, 42; Miller v. Miller, 8 Serg. & R. 267; Davis v. Calvert, 5 Gill & John. 269; 1 Mass. 71; 4 S. & R. 499; 13 Id. 323, 328, 329.

3.  John Willingham was a competent witness for the defendant, because he was called against his interest.   His sister, Mrs. Davis, was a principal devisee and legatee under the pretended will, who being dead without children, the witness was interested to establish the will—if established, he would be entitled to a distributive share of the legacies bequeathed to her.   Sims, v. Killen, 12 Ala. Rep. 497. For the like reasons Griffin was incompetent as a witness for the plaintiff, to show the validity of the will.

4.  The extreme old age of the deceased, connected with the unnatural character of the will, were properly admitted to induce the belief that the will had been improperly obtained; and the poverty of the daughters was competent to show the unnatural character of the will.   Clarke v. Fisher, 1 Paige Ch. Rep. 171.   There was no error, therefore, in admitting evidence of the needy circumstances of the daughters.   For the same purpose it was competent to show that the deceased, in the vigor of his life, had made a different will, by which just and equitable provisions were made for those who were cut off by the second will.

5.  The evidence of John Willingham was competent, consisting of the declarations of the deceased, made shortly before the pretended will, to show that undue importunity was being used to obtain the same, and that at that time, he did not intend to make a will, but to leave his property to descend and be distributed under the statute.   Rambler, et al. v. Tryon, et al. 7 S. & R. 93; 2 Pirtle's Dig. 535, § 95; 2 J. J. Marsh. 242-3; Miller v. Miller, 3 S. & R. 269.   The remainder of his evidence was proper to show that Roberts

had deceived not only the deceased, but his wife also ; and taken in connection with other evidence in the cause, it was competent to show there had been a combination between Roberts and the old woman to impose upon the old man, in the matter of his will. This other evidence in part, is, that the old woman had destroyed the first will, and that the last one was made just as she wanted it. Now connect these two facts with the evidence of Mrs. Nancy G. Freeman, that the old woman had sent for the plaintiff when the deceased was very feeble, and also in a very doubtful state as to sanity, and made his will, and I think the mind will be strongly drawn to the conclusion, that the will was improperly obtained.

6. The rebutting evidence offered and rejected, needs only to be read, to see that the court was right in rejecting it. It consisted of the declarations of Mrs. Davis,—the mere opinions of witnesses, and conversations that were wholly irrelevant and improper to be received.

7. The motion of the plaintiff to submit to a non-suit for the purpose of bringing the case to this court under the act of the last legislature was properly overruled, because it was not a case embraced by the act.

8. The charge of the court, excepted to after the jury had delivered their verdict, cannot be considered here. The objection was made too late.

CHILTON, J.—This was a proceeding under the 9th section of the act of 1821, in the orphans' court, to try the validity of the will of Nathaniel Davis, late of Tuscaloosa county, deceased. The act under which it was instituted, provides, " when the validity of any will shall be contested, or doubts shall arise as to its validity, or as to any fact, which, in the opinion of the judge, it may be necessary to have ascertained by a jury, before awarding any order, judgment or decree, such judge, at any stated session, or on any sitting held in vacation, according to the provisions of this act, may forthwith cause a jury to be summoned and impanneled, to try such issues, or inquire of such facts, as under his direction shall be submitted to their decision, and shall cause them to be sworn in such form, as the case may re-

quire.    Clay's Dig. 304, § 35.    By the first section of the act
of 1823, a mode is pointed out for selecting the jury.    As no
formal pleading was had in the orphans' court, setting forth
the  particular grounds upon  which said will was contested,
we must regard the case as presenting every issue, which, if
found for contestants, would render the will invalid, and
which the proof conduces to establish.    The counsel for the
contestants in this court, insist, that although the deceased
had sufficient mind to make a will, (and which the bill of ex-
ceptions shows, was admitted in argument on the trial in the ,
orphans' court,) yet the proof offered and received was legit-
imate as conducing to show, that the deceased, laboring un-
der the physical and mental imbecility which were the result·
of his extreme old age, was an easy prey to the artifices of a
second wife, by whom he had no children, and that he  was
induced by her importunity, and the exercise of an undue in-
fluence over him, to make a will, excluding from its provis-
ions, the most unfortunate members of his family, and greatly
beneficial to her ; and to show that the will made an unsuit-
able and unnatural disposition of his property, and contra-
vened his previously expressed determination.

Without considering each exception to the testimony se-
parately, we propose to deduce the general rules of evidence
as applicable to them ; that by refusing the exceptions to the
will, we may with less propriety ascertain what testimony
the court should have received, and what rejected.

1. What acts and declarations of an executor may be re-
ceived in evidence to impeach or sustain the will, in a con-
troversy to which he is a party ?    The rule contended for by
the counsel for the plaintiff, that the declarations of the ex-
ecutor, who is the mere nominal plaintiff, may be given in ev-
idence, although sanctioned by some of the authorities refer-
red to, has been repudiated in this State.    In the case of
Head, &c. v. Shearer, et al. 9 Ala. Rep. 791, in which
this court review its former decisions on this point, it is held
" that an admission of a nominal plaintiff, after he has parted
with his interest in the note, cannot be given in evidence to
defeat the beneficial plaintiff.    Copeland and Lane v. Clarke,
2 Ala. Rep. 388 ; Chisolm v. Newton & Wyley, 1 Ala. Rep.
371; Brown v. Foster, 4 Ib. 282.

The same doctrine received an examination by this court
in the case of Graham v. Lockhart, 8 Ala. Rep. 26. In that
case, it was attempted to give in evidence the declarations of
a trustee in a trust deed to impeach the deed; the circuit
court rejected the evidence, and this court affirmed the judg-
ment. The contrary rule, recognized by the English courts,
that the admissions of the plaintiff on the record are always
evidence, although he be but a trustee for another, has, by
the uniform decisions of this court, been departed from. It
is held both in England and in this country, that he cannot
release the action. Payne v. Rogers, 1 Doug. 407; 1 Salk.
260; Isaacs v. Boyd, 5 Por. Rep. 388; Roden v. Murphy,
10 Ala. R. 804. It would seem absurd to say the trustee
could by his admissions destroy a right of action which he
could not release, and thus effect by indirection what he
could not directly accomplish. The executor, having no in-
terest under the will, is but the agent to execute, not to de-
feat, its provisions, and to allow his admissions to prejudice
the rights of the legatees, would not only be unjust, but dis-
astrous in its consequences. It follows that the orphans'
court committed an error in allowing the declarations of
Roberts, the executor, to be given in evidence against his
objection. Horn v. Whittier, 6 N. Hamp. Rep. 88; 5 Ib.
268.

We might here close this opinion, but as the case will be
sent back for another trial, it becomes important for us to de-
clare the law as applicable to the other points raised in the
record, as a guide for the orphans' court in its future action
in the cause.

2. The next question presented for our consideration by
the bill of exceptions is, whether the orphans' court proper-
ly allowed the declarations of Mrs. Davis, the widow of the
supposed testator, and principal devisee in the will, to go to
the jury. It is insisted by the counsel for the defendants in
error, that her declarations are evidence, because, though
she is not a party of record to the suit, yet she is a party re-
ally in interest. Upon a careful examination of the authori-
ties referred to by the counsel, we do not think they sustain
this position. In Phelps, et al. v. Hartwell, et al. 1 Mass. R.
71, it was proposed to prove that one of the principal de-

Roberts v. Trawick.

visees, and who was also executor, had expressed his opinion, that the testator, at the time of making his will, was not of sound mind. Dana, C. J., and Strong and Thacher, Justices, were against admitting the evidence offered. The majority of the court seem, however, to lay some stress upon the fact, that the declaration offered amounted only to an *opinion*, and that the facts upon which it was based, were not declared.

In Miller, et al. v. Miller, 3 Serg. & R. 267, the defendants offered evidence to prove, that one of the plaintiffs in the issue, and who was a devisee under the will, had, after its execution, " by various discourses, *intimated*, that he had procured·the will to be made, that the same was read to him, and that he had given the reasons why his brothers and sisters had gotten so small a portion." This evidence was rejected by the register's court, and the question was presented upon the appeal, whether the declarations of one devisee were evidence against the other devisees. The court declined deciding this question, and sustain the rejection of the proof upon the ground that it was vague, indefinite, and immaterial. The same question arose in Bovard and wife v. Wallace, et al. 4 Sergt. & R. 499. The defendants offered to prove, that one of the devisees had *declared*, that the testator, at the time of making his will, was incapable of making a valid disposition of his property. The court rejected the proof upon the authority of Miller v. Miller. The question however is again presented to the same court, Nussear v. Arnold, 13 Sergt. & R. 323. In this case one Margaret King was the principal devisee in the will, which gave her the whole estate (except a few legacies to a small amount) for life ; after death one half was to go to her relatives, and the other half to the relatives of the testator. The defendants offered to prove her declarations, " that the testator, at the time of making his will, was incapable of transacting business." The court (Tilghman, C. J.) say, " it is a case, *sui generis*, where the rights of several persons are tried together, and where, so far as concerns personal estate, the law admits of no other mode of trial. Under these circumstances, it is unsafe and unjust to admit the rights of one to

11

be affected by the declarations of another, and therefore the evidence ought not to have been admitted."

In Maryland, it is held, that declarations adverse to a will, made by an executor, who was defendant upon the record, and a contingent devisee respecting every interest under the will, are competent evidence to go to the jury. See Davis v. Calvert, 5 Gill & Johns. 270. This decision is founded on the rule, so generally recognized by the English courts, that Mr. Justice Lawrence, (in Bauerman v. Radenius, 7 T. 663,) says he could find no case opposed to it, " that the admissions of a party on record are always evidence, though he be but a trustee for another"—a doctrine which this court has, for substantial reasons, heretofore repudiated. See Graham v. Lockhart, 8 Ala. R. 9.

I have looked into our reports, and have been unable to find any decision directly upon the point here presented. We have then to make a precedent which will hereafter govern us in our adjudication of similar cases; and in view of the authorities which we have been enabled to examine, and the reasoning upon which they are predicated, we feel safe in declaring the correct rule to be, that when a will is propounded to the orphans' court for probate, and is there contested, the admissions, or declarations, by one of several legatees of the unsoundness of the testator's mind, or that fraud, imposition, or undue influence was practised upon, or exercised over him, shall not be received to invalidate the will to the prejudice of the other legatees. Dan v. Brown, 4 Cow. Rep. 483.

3. We cannot perceive upon what principle the witness, Whitson, was permitted to give evidence of a will executed by the testator some twelve years anterior to the one in controversy, by which it is said the testator made an equal division of his property among his children. Neither party to this controversy claimed the old will as valid; and if it be granted, as it was admitted in the argument, that the testator, at the time of the execution of the last will, was possessed of sufficient mind to make a valid disposition of his property, all former wills are expressly revoked by the execution of this. If a will be made in conformity to a fixed determination entertained and expressed for years, this, it is

held, is strong proof of capacity. Couch, et al. v. Couch, 7 Ala. R. 519. But as every sane man has a right to change his opinion, and to disregard the claims of his children, however needy or meritorious, and to will his property even to a stranger, we do not consider the insulated fact of his having twelve years previously made a different disposition of his property, as at all affecting the validity of his last will. See Stephens and wife v. Vancleve, 4 Wash. C. C. Rep. 262. We think the proof was irrelevant, and calculated to mislead the jury, and should therefore have been excluded. But if it were permissible to read the old will in evidence, parol proof of its contents, predicated upon the admissions of one of the legatees of its loss or destruction, is not allowable. Brown v. Betts, 9 Cow. R. 208; 18 Pick. 379; 1 Ala. Rep. 602.

4. As to admitting the declarations of the testator to defeat his will, we find some conflict of authority. But we think the true rule laid down in the case of Smith v. Fenner, 1 Gal. R. 170, where it is held, that the declarations of the testator, made before and at the time of the execution of the will, or so shortly thereafter as to form a part of the *res gestae*, and necessarily connected with it, may be received to prove fraud or undue influence in its execution. See Stephens and wife v. Vancleve, 4 Wash. C. C. Rep. 263; Jackson v. Kniffin, 2 Johns. R. 31; 1 Ves. 440; 2 P. Wms. 136; Rambler v. Tryon, 7 Sergt. & R. 90.

5. The court erred also in refusing to hear proof as to the interest of the witness, Griffin. The interest of a witness, most usually ascertained upon an examination of the witness himself, upon his *voire dire*, may be shown, or a presumptive interest disproved by proof *aliunde*. If, in the present case, the witness, Willingham, would receive a greater share of the estate by defeating the will, than he would under it, he is clearly an interested witness—his interest would preponderate in favor of the person offering him, and his proof would be rejected. We do not decide whether the witness was or was not interested, as the facts are not before us—we can only assert the proposition of law, that it was the duty of the court to have heard the proof as to his interest which was offered and rejected. The ground of its rejection was,

that the proof could not be allowed, "unless the party could also show the amount of debt against the estate, or by some other means, show what would be the amount for distribution after settling up the estate." The proof offered was pertinent to the question of interest, and as the court could not judicially have known that the estate owed debts which were unpaid, the failure to prove a negative, that it did *not* owe, was not a legitimate ground for its exclusion. Harrel v. Floyd and wife, 3 Ala. R. 16.

6. The proof of the refusal of one of the executors named in the will to take upon him its execution, is wholly foreign from the issues before the jury, and was clearly irrelevant. What influence such proof could have, we cannot easily conceive, but as it was insisted on, and allowed at the risk of an exception by the plaintiff, we are not to presume that it was without its effect.

7. As to the opinions of the witnesses, sought to be elicited on both sides of this controversy, respecting the capacity of the testator, and the influence and control exercised over him by Mrs. Davis, his wife, were the matter *res integra*, I should be inclined, both from the weight of authority, and considerations of sound policy, to exclude the whole of them. It cannot have escaped the observation of the profession, that conclusions of this sort, especially when formed by those whose avocations do not peculiarly fit them for judging, though never so honestly formed, are most unsafe guides for the ascertainment of truth. It is however settled, that where the question of insanity is involved, the general rule which allows witnesses only to relate facts, circumstances, or a series of declarations which evince unsoundness of mind, allows of exceptions "arising out of some peculiar relation or connection of the witness, with the person whose sanity is questioned." See the cases collected in Bowling v. Bowling, Ex'r, 8 Ala. R. 538. Also, the State v. Brinyea, 5 Ib. 243; 2 Cowen & Hill's Notes, Phil. on Ev. 759, note 529. What class of witnesses come within this peculiar relation, so as to make their opinion, founded on the facts, legitimate testimony, is not so well settled. In Rambler v. Tryon, 7 Sergt. & R. 90, the witness, whose opinion was received, had known the testator intimately from childhood until his death. With-

out, however, entering upon an examination of the authorities, or presuming to lay down a rule as applicable to all cases which may arise, we think, that to render the opinions of witnesses in such cases—those who are not physicians, nor skilled as to the *indicia* of insanity—legal evidence, such opinions should be preceded by the facts or circumstances upon which they are based, and should only be given by those whose long intimacy, and familiar and frequent intercourse with the deceased, peculiarly enable them to observe any mental aberration on his part.

8. The only remaining ground of objection to testimony is, that the orphans' court permitted the contestants to prove the pecuniary condition of testator's daughters. In Jackson v. Betts, 9 Cow. 208, it was held, that the situation of any of the testator's children, or grand children, as to property, and the comparative inadequacy or inequality of a provision for them in his will, are inadmissible to show an express or implied revocation. It is often most difficult to determine what connection an isolated fact may have upon the issues until the whole proof is submitted. Standing alone, it may prove nothing, but connected with various other facts and circumstances, it may form a strong link in the testimony. No competent means of ascertaining the truth ought to be rejected. The court, we think, should have admitted all testimony conducing to show the unnatural character of the will in controversy; that it deprived the most unfortunate of the testator's family from any participation in his bounty, is a circumstance which, in connection with other circumstances, was proper to go to the jury. One question was, whether the wife of the testator had exercised such undue influence over his mind, as to take away his freedom in the execution of his will. To establish this, it was competent for the contestants, in connection with proof of acts, or efforts on her part to induce its execution in a particular way, to show that the testator was old—was in feeble health—of weak mind—was unduly prejudiced by his wife against his children, and that his will is not such as a man influenced by the ordinary feelings which prompt us to provide for our offspring, would have made. On the other hand, it was competent to show, that he had couse for rejecting the claims

of his children—or, that the influence exercised by the wife was but the ascendancy which her virtues gained over him. For, to deny the legitimate exercise of such influence, would be to rob virtue of her reward. Small v. Small, 4 Greenl. 220.

9. We are satisfied that the court acted properly in refusing to permit the plaintiff in error to take a non-suit. This is not one of the description of cases contemplated in the statute of 4th Feb. 1846. See pamph. Acts of 1845-6, p. 35. The court, by statute, is required to proceed with the investigation, and to determine the matters put in issue—and if 'the executor refuse to produce the will, he is liable to process of attachment. Clay's Dig. 304, *et seq.*

Let the judgment of the orphans' court be reversed and the cause remanded, that a *venire de novo* may be awarded.