## BUNYARD AND WIFE *vs.* McELROY, EX'R.

1. On the trial of an issue *devisavit vel non*, between the executor, who was also the principal legatee, and another legatee, the declarations or admissions of the executor cannot be received to invalidate the will, which makes provision for himself and several others, even when offered in connection with proof

that it would be to the interest of all the legatees, except the executor, to set it aside.

2. Nor are the declarations of the testator, made by him some six or seven years before the execution of his will, that the executor and his wife "were constantly *ding donging* at him to make a will, but that he would not do it, and never meant to do it; that the law of Alabama would make a good enough will for him," admissible evidence against the executor.

3. The law does not require that the proof of undue influence should be confined to the time of the execution of the will; yet the party offering such proof must show, that it is so connected with the act done as to furnish some reasonable ground of inference that the act was influenced, in whole or in part, by it.

ERROR to the Court of Probate of Sumter.

The will of Isaac McElroy, deceased, was propounded for probate, in the Court of Probate of Sumter, by Isaac R. McElroy, the executor, who was also a son of the testator and his principal legatee. The validity of the will was contested by James Bunyard and his wife Delia, who was a daughter of the testator, and also a legatee; whereupon, an issue *devisavit vel non* was made up and submitted to a jury, who decided in favor of the validity of the will.

A bill of exceptions was sealed at the instance of the contestants, which sets out the following state of facts: "The contestants offered a witness, who was well acquainted with decedent, and who visited him four days before the will was made, and who testified as to the mental and physical condition of decedent at such visit. Contestants then asked the witness to state any conversation he had with the executor at that time. An objection being made by the attorneys for the executor, the court ruled that the contestants could not prove the declarations of the executor generally, but might prove such as would go to show that the executor had exercised undue influence, in procuring the will to be made. Contestants then offered to prove by said witness, that he, " on reaching the executor's house, with whom decedent was living, and had lived for many years, inquired of the executor and his wife how the old man was, meaning decedent; and the executor replied, 'the old man was very delirious, and had lost his mind entirely;' that the contestant and his wife (who was the daughter of the testator,) had come to the house of the executor, where the old man was lying sick, on the Thursday

before, and stayed until the following Sunday morning, and that the old man, during all this time, had never recognized his said daughter." The attorney for the contestants, in offering to make this proof, stated, that he should show, in order to strengthen his proposition to admit said confessions of the executor, that it was to the interest of all the legatees, except the executor, (and that he was the principal legatee,) to have the will set aside. To the introduction of these admissions of the executor his attorney objected, and the court ruled that they were inadmissible; and to such ruling the contestants excepted.

During the progress of the trial, the contestants, as a circumstance tending to show the exercise of undue influence by the executor over the testator, and the principal one, the other circumstances being merely presumptive evidence, offered to prove by a witness, that, six years or more before the making of the will, the decedent had told the witness "that his son (the executor) and the executor's wife were constantly ding-donging at him to make a will, but that he would not do it, and never meant to; that the law of Alabama would make a good enough will for him." Much testimony had, before this, been offered by both sides; tending to prove, for the executor, that decedent was of sound and disposing mind when the will was made, and by the contestants he was not. The court ruled the proof offered inadmissible, and contestants excepted."

The only error assigned is: "excluding the evidence offered by contestants, as shown by the bill of exceptions."

HUNTINGTON, for plaintiff in error:

The court ought to have admitted the declarations of the executor, because he was a party to the record in adverse interest, being the sole devisee, though he took the bequest charged with certain conditions. In the court below it was offered to be shown, in support of the proposition to use his admissions, that it was in fact to the interest of all the other beneficiaries under the will, that the same should be set aside.

In Roberts v. Trawick, the declarations of the executor were held inadmissible, because he had no interest under the will, and therefore could not be permitted to prejudice the

21

rights of the legatees by his mere admissions. 13 Ala. 79, 80. He was likened to a nominal plaintiff, in regard to whom this court has held, that his admissions, made after parting with the note sued on, cannot be given in evidence to defeat the beneficial plaintiff. Head, use, &c. v. Shearer, 9 Ala. 791.

This case is different on account of the interest of the executor, and comes directly within the pale of Davis v. Calvert, 5 Gill & Johnson 269—a strong case in our favor, and recognized by this court in Roberts v. Trawick, 17 Ala. 58.

See the last case to the point that the court erred in excluding the declarations of the testator, as shown in the bill of exceptions. If he was of unsound mind when the will was made, or acting under undue influences, (each of which was to be determined by the jury,) we had a right to strengthen the presumptions on this head, by showing what his intention was at any time; and the other side could have rebutted, by showing that the intention was subsequently changed. Without such rebutting proof, the presumption would have been that the intention remained unaltered, upon the same principle that a partnership or marriage once proved, is presumed to be continuing until its dissolution is made manifest. This principle is a general one, and the above particular applications of it are only for the sake of illustration.

R. H. SMITH, contra:

1. In propounding a will for probate the executor is not bringing a suit. He only informs the court of the existence of the will, &c.; the court institutes the suit, &c.

Hence the executor does not, properly speaking, occupy the relation of party to the suit. He cannot withdraw or dismiss the suit, cannot consent to any given result. He is an actor in this case for himself and others, each having a common, but not a joint interest in the result.

Even were all the non-contesting legatees actually and formally parties with the executor, the admissions of one could not be given in evidence against all; for the rule is, that to authorize such admissions there must not only be a common but a joint interest. 1 Greenleaf's Ev., § 174; 4 Cowen's R. 472; ib. 494.

2. The exclusion of the admissions in this case stands on

other grounds than apply to an ordinary suit, as shown by Roberts v. Trawick, 13 Ala. 68; Nussear v. Arnold, 13 Ser. & R. 328; Phelps v. Hartwell, 1 Mass. 71.

The first question is too large and general, and the rule adopted by the court was quite too favorable for plaintiff in error.

The other questions are amenable to the criticism in 1 Mass. R. 71, they embracing the executor's opinion as to the condition of the testator's mind, as well as facts.

3. The rule is, that assertions of testator, to be evidence, must be so near the time of making the will, as to be part of the *res gestae.* To this is the following exception: You may prove, in favor of the will, a continuing state of mind, by showing that, long previous to the will, testator declared his intention to be in accordance with the will; this tends strongly to show that the character of the will had long been settled in his mind; but to destroy a will by proving the testator, six years before, declared he would not make a will, would be to say every man must stick to every good or ill intention, and if he changes it, it will be evidence against the will. 13 Ala. 68; 2 Greenl. Ev., § 690.

CHILTON, J.—This was a contest upon an issue *devisavit vel non*, in the Probate Court of Sumter, upon the will of Isaac McElroy, deceased.

The will gives legacies to several persons, the executor himself being one of the legatees.

The first question is, whether the admissions of the executor can be received to invalidate the will, which makes provision not only for himself but several others. We examined this question with much care in Roberts v. Trawick, 13 Ala. 68, and there decided it adversely to the plaintiff in error. True, in that case the declarations of the principal devisee were offered to impeach the will, which made provision also for others; but we think the principle is the same, whether such devisee be the executor or one having a legacy merely in common with others. All the legatees did not contest this will, and although it is stated that these admissions were offered in connection with proof that it would be to the interest of all but the executor to set it aside, nevertheless, we

cannot assume that those legatees who are satisfied with the provision made for them, consented to the admission of testimony to defeat their rights under it.

The proof of the declarations made by the testator some six years or more before the making of the will, that the executor (who was testator's son) and his wife, were constantly "ding-donging at him to make a will, but that he would not do it, and never meant to do it; that the law of Alabama would make a good enough will for him," we think, was properly rejected. Now, as we said in Roberts v. Trawick, 17 Ala. 58, the rule is not so stringent, as to require that proof of undue influence should be confined to the time of the execution of the will. Yet the party offering such proof must show, that it is so connected with the act done, as to furnish some reasonable ground of inference that the act was influenced in whole or in part by it.

There is no such connection proved in this case. The executor and his wife might, six years before the will was made, have importuned the testator to make a will; but it does not follow that they were desirous to induce him to make an improper one, or that the one made six years thereafter was the result of such persuasion. No reasonable inference adverse to this will could be drawn from the fact, that, six years or more before it was executed, the testator said he would no make a will, although the executor and his wife were "ding-donging" at him to do so. It is too remote from the fact alleged to have been influenced by it, and, disconnected from proof of continuous intervening persuasion, should have been rejected, as well calculated to mislead the jury, and to deny to the testator the right which every one has of changing his mind in respect to the disposition of his property by will.

Let the judgment be affirmed.