# TAYLOR *vs.* KELLY.

[CONTEST AS·TO VALIDITY OF WILL.]

1.  ⸱ ⸱ *'y ny of contestant as witness against will.*—One of the contestants, who is a pa. ⸱ to the suit, and as such liable for costs, is an incompetent witness to defeau che probate of the will, even though he release all his distributive interest in the estate.

2.  *Presumption in favor of judgment.*—Where a witness, who was excluded by the primary court as incompetent, is shown by the record to have been a party to the proceeding, though a subsequent statement in the bill of exceptions recites that his name was stricken out as a party, the appellate court cannot presume that his name was thus struck out when he was offered as a witness.

3.  *What constitutes undue influence.*—Undue influence, such as will vitiate a will, must, in some measure, destroy the testator's free agency ; must be equivalent to moral coercion ;  must constrain him to do that which is against his will, but which, from fear, the desire of peace, or some other feeling than affection, he is unable to resist.

4.  *Effect of misrepresentation to testator on validity of will.*—A misrepresentation to the testatrix, respecting one of her children, made by the proponent of her will, which misrepresentation "did not have the effect to influence her in her deposition of her property that she had designed to bequeath to said child," does not vitiate the will.

5.  *Undue influence avoided by subsequent ratification of will.*—The subsequent ratification of a will, when there is no fear on the part of the testatrix, and when the undue influence formerly exerted on her mind has been removed, destroys the effect of such undue influence as a ground for impeaching the will.

6.  *Mental capacity of testator.*—A testatrix who, notwithstanding her great age, bodily infirmities, and impaired mind, has mind and memory enough to recollect the property which she is about to bequeath, the persons to whom she wishes to bequeath it, and the manner in which she wishes to dispose of it, and to know and understand the business in which she is engaged, is, in legal contemplation, of sound and disposing mind and memory.

7.  *Implied revocation of will.*—A written instrument, whereby a testator, in compromise of a pending suit, surrenders his interest in certain slaves therein involved, does not operate as an implied revocation, *in toto*, of a will previously executed, embracing said slaves and other property ;  but, conceding that it is a revocation so far as the slaves are concerned, the will is nevertheless valid, and should be admitted to probate, as to the other property.

8.  *Declarations of proponent not admissible to invalidate will.*—The acts and declarations of the proponent of a will, who is also one of the legatees, cannot invalidate the will, nor defeat its probate, even when they might estop him from claiming any interest under it.

9. *Charge too favorable to appellant.*—A charge to the jury, making the validity of an instrument as a will depend on certain extrinsic facts not authorized by law, when the instrument is a will on its face, is not an error of which the contestant can complain.

10. *Instrument, operating partly as contract, held will.*—An instrument in writing, purporting to be a will, whereby the testatrix "wills and bequeaths" her slaves, at a specified value, to one of her married daughters, "to go into the immediate possession" of her and her husband at the date of the instrument, "in consideration" that they supply her with all things needful for her support and comfort during her life, for which she allows them a specified sum out of the estimated value of the slaves; providing that, at her death, the residue of the estimated value of the slaves shall be divided among her several children; and giving all her household furniture to two of her daughters,—held a will, notwithstanding some of its provisions were operative as a contract *inter vivos.*

11. *Charge requiring explanation.*—A charge which, though ambiguous and involved, and, unexplained, tending to mislead the jury, does not assert an incorrect legal proposition, is not an error which will work a reversal of the judgment.

12. *Weight and effect of testimony.*—A charge to the jury, asserting that, "if witnesses differ, and all have equal opportunities of knowing the facts about which they testify, then, even if one has sworn affirmatively, the jury are not bound to believe him, but, in determining what is correct testimony, will look to all the facts and circumstances of the case,"—though involved, ambiguous, and, possibly, tending to mislead the jury, does not assert an incorrect legal proposition.

13. *Charge too favorable to appellant in referring legal question to jury.*—A charge which submits to the jury the decision of a legal question, which, as the record affirmatively shows,'did not arise on the evidence, and thereby gives the appellant an additional chance for a favorable verdict, is not an error of which he can complain.

APPEAL from the Probate Court of Autauga.

IN the matter of a paper propounded for probate as the last will and testament of Nancy Taylor, deceased, which was in these words:

"State of Alabama, }  Know all men by these presents,
Autauga county. }  that I, Nancy Taylor, of the State
and county aforesaid, do make and publish this my last will and testament. First, I will bequeath all my slaves, viz., Amanda, a woman about twenty-seven years of age, and her three children, viz., Sarah, nine years of age, Mary, about three years of age, Lucinda, nineteen months of age,—the four named slaves worth $1750,—to my daughter Martha S. Kelly, wife of Daniel K. Kelly, and the said negroes to go into their possession at the date of

this instrument, at the price above stated, in considera-
tion that the said Martha S. Kelly and Daniel K. Kelly is
to supply me with all things needful for my support and
comfort during my life, for which I allow the said Daniel
and Martha $500 out of the price of the said negroes.
Second, I will that, at my decease, the balance of the
$1750 be equally divided between my several children,
except Martha S. Kelly, who is to have $100, and William
L. Taylor, to whom I have advanced $70, which is to
come out of his share, and James C. Taylor $15 which I
have advanced to him, to-wit, Sally H. Lamberson, Judith
W. Smith, Nancy C. Harwell, Fanny H. Williams, Eliza-
beth L. Beene, William Lack, the son of my daughter
Lockey J. Lack, if living,—if dead, his share to go to
Sally Lamberson, Judith W. Smith, Nancy Harwell,
Elizabeth Beene, and Thomas C. Taylor. I give all my
household property to Fanny Williams and Martha S.
Kelly. Now, at my death, the said Martha and Daniel
are to pay the remainder, which is $1250, as before stated;
and it is my request, that the said Martha and Daniel
endeavor to notify those heirs who live out of the State.
In testimony whereof, I have hereunto set my hand, and
affixed my seal, Febuary 1st, 1853.

her

"NANCY ✕ TAYLOR.

mark

"We, the subscribing witnesses hereto, do certify that
we saw the aforesaid Nancy Taylor sign, seal and publish
the foregoing instrument as her last will and testament;
that it was done in the presence of each of us; that we
signed our names hereto, at the request of the said Nancy
Taylor, in her presence, and in the presence of each other.
In testimony whereof, we have hereunto set our hands,
this 1st day of February, A. D. 1853.

"Thomas Hogg,

"A. Sample."

This instrument was propounded for probate by Daniel
K. Kelly, and was contested by Thomas C. Taylor and
William L. Taylor, who were sons of said Nancy Taylor,
on the following grounds: 1st, that said instrument is not

the last will and testament of said decedent; 2d, that said instrument is a deed of gift, and not a testamentary paper; 3d, that said instrument is a deed of sale, and not a testamentary paper; 4th, that said instrument is void for uncertainty on its face; 5th, that said instrument was procured by undue influence on the part of said Kelly and his wife, and is therefore null and void; 6th, that said instrument was procured by fraud on the part of said Kelly and wife, by inducing said decedent, through false representations as to the treatment of her by her son Thomas C. Taylor, to leave the house of said Thomas, and reside with them; 7th, that said instrument was revoked by said decedent in her life time; and, 8th, that said proponent is estopped from offering said instrument for probate, by having surrendered up the slaves therein named, before the death of said decedent, to William L. Taylor, as administrator of the estate of William Taylor, deceased, and having offered them for sale, without objection, as the property of said William Taylor's estate.

The bill of exceptions purports to set out all the evidence, of which, however, it is only necessary to state the material portions bearing on the points here decided.

The proponent having proved, by the subscribing witnesses, the execution of the instrument propounded for probate, and the mental capacity of the testatrix at the time of its execution, the contestants then offered Thomas C. Taylor, a son of the testatrix, as a witness; having first produced and proved a release from the said Thomas to William L. Taylor, as the administrator of the estate of William Taylor, deceased, of all his interest in the estate of Nancy Taylor. "It was in evidence at this time," so the bill of exceptions states, "that no administration of any kind whatever had ever been granted on the estate of said Nancy Taylor; and that Jesse R. Jones, the general administrator of the county, had, within one hour before the trial of this cause commenced, applied to said court for letters of administration on said estate; which application the judge refused to grant. Under these facts, the court refused to allow said Thomas C. Taylor to be sworn as a witness, and the contestant excepted.

*Before* (?) the refusal of the court to allow said Thomas C. Taylor to be examined as a witness under said release, the contestant proved the due execution of another release," and again offered said Taylor as a witness ; but the court still refused to permit him to be sworn, and the contestant excepted.   The contestant offered the said witness a third, fourth, and fifth time, under three  other  releases ; and reserved  exceptions to each  refusal of the court  to allow him to be examined.   These several exceptions are stated to have been reserved by the "defendant," or "contestant," in the  singular ; and  there is an  entry in the record,  subsequent to the judgment entry, and  not embraced in the bill of  exceptions, to the effect that the name of Thomas C. Taylor, on motion of the contestants, and against the objection of the proponent, "was struck out from  the  objections filed to the probate of said instrument."

The contestant offered  evidence  conducing to sustain the allegations of fraud and undue  influence on the part of Kelly and wife, and of mental  incapacity on the part of the testatrix ; and, in support of the allegation that the will  was  revoked by the testatrix, introduced a written agreement, under seal, signed by said  testatrix, said Kelly, and said William L. Taylor, which was proved  to have been executed in  compromise of the suit therein referred to, and which was in these words :

"William L. Taylor, adm'r ⎫  In the chancery court
of the estate of Wm. Taylor, ⎪  held at Wetumpka,  for
        vs.                   ⎬  the 15th district of the
    Nancy Taylor, and        ⎪  middle chancery division
    Daniel K. Kelly.         ⎭  of the State of Alabama.

"In  the  above-stated case, it is agreed  between  the parties,  that the said Nancy  Taylor and Daniel K. Kelly hereby  deliver to the said William  L. Taylor, as administrator  as aforesaid, the negroes  sought to be recovered in this  suit, viz., Amanda, a woman  about 29 years old, and her children,  viz.,  Sarah, a girl  about 12 years old, Clark, a boy  about 10  years old, Mary, a girl  about 7 years old,  Lindy, a girl  about 6 years old, Lukelton, a  boy  about 3 years  old, and Benjamin, a boy about

20 months old ;§ to be administered upon by him as such administrator,—we claiming no right or title to them, except our rights in them as distributees of the estate of said William Taylor, deceased; and the said William L. Taylor is to dismiss said suit, at the costs of the plaintiff, and all bonds given in this case are to be released. Given under our hands and seals, this 3d day of January, 1856."

Under this agreement, the slaves were delivered up to the administrator, and were afterwards sold as the property of the estate.

At the request of the proponent, the court instructed the jury as follows,—the numbers being the same as in the record:

"1. If the jury believe from the evidence that the influence exerted to procure the making of the will did not amount to force, or coercion, destroying her free agency, then such influence was not an undue influence.

"2. If they believe from the evidence that the will was not obtained by the exercise of an influence amounting to coercion—by a motive tantamount to force or fear—such was not an undue influence.

"3. An influence, to be an undue influence, must be such as, in some degree, to destroy the free agency of the party making the will, and such as to constrain her to do what is against her will.

"4. Even if they believe from the evidence that Daniel K. Kelly made false representations as to Thomas Taylor; yet, if those representations did not have the effect to influence Mrs. Nancy Taylor in her disposition of her property that she had designed to bequeath to Thomas Taylor, such representations cannot vitiate the will.

"5. If the jury believe that Nancy Taylor, at the time she made her will, made it under [undue] influence; yet, if afterwards, when there was no cause for fear, and when the undue influence was removed, she ratified and confirmed the will, then the will is the same, in law, as if no undue influence had been exerted.

"6. If they believe from the evidence that Nancy Taylor, at the time she made the will, had a sound disposing

mind, she could make a will; that, for her mind to be a sound, disposing mind, it is not necessary that her memory be perfect, and her mind be unimpaired; but, if she had mind and memory enough to recollect the property she was about to bequeath, and the persons to whom she wished to will it, and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in,—then, in contemplation of law, she had a sound, disposing mind; and her great age, bodily infirmity, and impaired mind, do not vitiate a will thus made.

"7. If they believe from the evidence that Nancy Taylor signed, or caused her name to be signed to, the written agreement with Daniel Kelly and William L. Taylor, that is not a revocation of the instrument purporting to be her will.

"8. That if they believe Mrs. Taylor knew, when the slaves were taken away from Daniel Kelly's place, that they were taken off to be sold by William L. Taylor, as the property of William Taylor, deceased, that is no revocation of this paper, if they find it to be her will.

"9. If they believe from the evidence that Daniel Kelly signed the agreement as to the dismissal of the chancery suit, and gave up the negroes named therein, and stood by and saw them sold, and made no objection,—that does not vitiate this paper, if they find it be the will of Mrs. Nancy Taylor.

"11. If they find from the evidence that no money, or other valuable thing, was paid by Daniel Kelly to Mrs. Nancy Taylor, for the negroes named in the paper now propounded for probate; and that the negroes remained on the place where both Kelly and Mrs. Taylor resided, until they were taken away by the sheriff; and that Mrs. Taylor designed the bequests in this paper only to take effect at her death, and that Kelly was not to pay for nor own the negroes until her death,—then this is not a bill of sale.

"13. The acts and declarations of Daniel Kelly are not competent evidence to invalidate this paper, as the will

of Mrs. Nancy Taylor, to the prejudice of other legatees ; and the jury cannot consider them for that purpose.

"14. That if witnesses differ, and all have equal opportunities of knowing the facts about which they testify, then, even if one has sworn affirmatively, the jury are not bound to believe that one, but, in determining what is correct testimony, will look to all the facts and circumstances of the case.

"15. Even if Mrs. Kelly was allowed to possess the slaves during Mrs. Taylor's life, yet, if they find that Mrs. Taylor designed the title to pass only on her death, this does not vitiate the will.

"16. If they believe that Mrs. Taylor owned the negroes when her will was made, but they were taken from her before her death, and sold as the property of William Taylor, this does not vitiate the paper as a will.

"17. If they believe that Mrs. Taylor signed the paper as her last will and testament, and in the presence of Hogg and Sample ; and that they subscribed it as witnesses, in her presence, and the presence of each other; and that she was of sound and disposing mind, and made it without undue influence ; and that it was not obtained by fraud ; and that she did not revoke it, (and, to find it so executed, they will observe the rules of law on these subjects previously given them,)—then it is the last will and testament of Nancy Taylor, and they will so find."

The contestant excepted to each one of these charges, and requested others, some of which the court gave. The 9th, 10th, and 13th charges asked by the contestant, which were refused by the court, and the 11th, which was refused in part and given in part, (exceptions being reserved to each refusal,) are as follows :

"9. That if the jury find the paper propounded for probate to have been a will when executed and published, and that the chancery suit at Wetumpka was dismissed according to the agreement offered in evidence, then said agreement is a revocation of the will, and they must find the paper to be no will.

"10. That said agreement being a record of said chancery court, and a part of its judgment of dismissal,—its

genuineness cannot be impeached, or called in question, on this trial.

"11. That the proponent, Daniel Kelly, being a party to said agreement, and having stood by, without objection, and seen the administrator of William Taylor's estate obtain an order for the sale of the slaves from the probate court; and having delivered the slaves to said administrator for sale, and having attended the sale, and made no objection to it,—is estopped from offering the said paper for probate as a will; and he being estopped, the said paper cannot, if a will, be admitted to probate on his application.

"13. That if the jury believed from the evidence that the said Nancy Taylor executed the agreement offered in evidence, relative to the dismissal of the chancery suit, subsequent to the execution of the instrument propounded for probate; and that said chancery suit was dismissed, in pursuance of said agreement; and that the property described in said agreement is the identical property described in said will,—this is an implied revocation of said will."

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

GEO. W. GAYLE, and J. D. F. WILLIAMS, for the appellant.—1. Thomas C. Taylor was a competent witness for the contestant, under some one or all of the several releases proved. Moreover, the record shows that, before he was offered as a witness, his name was struck from the record as a party contestant.

2. The agreement relative to the dismissal of the chancery suit, to which Mrs. Taylor was a party, and which was subsequent to the execution of the paper propounded for probate, was an implied revocation of it as a will. 1 Jarman on Wills, 130; 4 Kent's Com. 512; Toller on Executors, 21.

3. The genuineness of Mrs. Taylor's signature to this agreement could not be impeached. The agreement had been received and acted on by the chancery court, and formed part of its decretal order; and the court must be

presumed to have decided on its genuineness before act-
ing on it.

4. The charges of the court on the subject of undue
influence, it is submitted, cannot be sustained.

5. If the will was executed under undue influence, its
subsequent ratification after the removal of that influence
did not give it validity.

6. The charges of the courts relative to the mental
capacity of the testatrix are erroneous.

7. The paper propounded for probate was not a will.
It was founded on valuable consideration, and passed the
possession of the property during the life of Mrs. Taylor.
Adams v. Broughton, 13 Ala. 731; Golding v. Golding,
24 Ala. 122; Elmore v. Mustin, 28 Ala. 313. The same
instrument cannot operate both as a will and as a deed.
Thompson v. Johnson, 19 Ala. 59.

8. Although the paper may have been valid as a will,
Kelly was estopped from propounding it for probate.

ELMORE & YANCEY, contra.—1. Thomas C. Taylor was
one of the contestants, and, therefore, an incompetent
witness for the other contestant.—Gilbert v. Gilbert,
22 Ala. 529; Deslonde & James v. Darrington's Heirs,
29 Ala. 92. Moreover, he was one of the distributees of
the estate, and, therefore, interested in breaking the will.
11 Ala. 249; 15 Ala. 618.

2. The correctness of the 1st, 2d, 3d and 4th charges is
sustained by Gilbert v. Gilbert, 22 Ala. 529; 1 Wms. on
Ex'rs, 39; 1 Jarman on Wills, 29, note 1.

3. The 5th charge, relative to the mental capacity of
the testatrix, laid down a correct standard.—Lowe v.
Williamson, 1 Green's (N. J.) R. 82; Watson v. Watson,
2 B. Monroe, 74; VanAlst v. Hunter, 5 Johns. Ch. 158.

4. The provisions of the Code (§§ 1597–99, 1613–14)
have abrogated the common-law rule as to implied revo-
cations of wills. Besides, the will disposed of property
not embraced in the agreement relative to the dismissal
of the chancery suit; and, as to this property at least,
ought to have been admitted to probate, even if revoked
as to the slaves.

5. The declarations and acts of the proponent, even when he is a legatee, cannot be received to invalidate the will.—Bunyard and Wife v. McElroy, 21 Ala. 311; Walker v. Jones, 23 Ala. 448.

6. The instrument was, on its face, a will, and not a deed.—Williams on Executors, vol. 1, p. 54; Walker v. Jones, 23 Ala. 448; Habergham v. Vincent, 2 Vesey, 231.

WALKER, J.—1. We pass by the question, whether the interest of Thomas C. Taylor was not released by some one or more of the several releases. He was one of the contestants, a party to the suit, and liable for costs; and, therefore, an incompetent witness, irrespective of his interest to defeat the establishment of the will.—Deslonde & James v. Darrington's Heirs, 29 Ala. 92; Gilbert v. Gilbert, 22 Ala. 529; Code, § 1649.

2. The name of the contestant appears, from a statement in the bill of exceptions posterior to the rejection of the witness, to have been stricken out by the court on motion. There is nothing which indicates that this was done before that contestant was offered as a witness, or cotemporaneously with the offer of him as a witness; or that the striking his name out as a party had any connection with, or reference to, the offer of him as a witness. We must pass upon the rulings of the court upon the question, in the light of the circumstances which appear to have been before the court at the time. We cannot presume, for the purpose of reversing the judgment, that the witness had ceased to be a party when he was offered to the court. If the court erred, it must be shown by the bill of exceptions, and cannot be presumed. The bill of exceptions states, that the first release was executed, and thereupon the witness offered; and that he was a son of the deceased. The release is then set out. It is then said, that, *"upon these facts,* the court refused to allow him to be sworn." Every subsequent offer of the witness is put expressly upon the ground of the release. No proposition, referring the restoration of his competency to the striking out of his name as a party, in connection with the release, was ever made. It is manifest that,

upon such a bill of exceptions, there is no room for us to say that the court below was ever called upon to decide the question of Thomas C. Taylor's competency as a witness upon the hypothesis that he had ceased to be a party to the suit when he was offered. If he was a party, he was clearly incompetent. We cannot, therefore, say that the court erred in rejecting the witness.

3. Mr. Justice Goldthwaite, in the case of Gilbert v. Gilbert, 22 Ala. 529, said : "Undue influence, legally speaking, must be such as, in some measure, destroys the free agency of the testator; it must be sufficient to prevent the exercise of that discretion, which the law requires in relation to every testamentary disposition. It is not enough that the testator is dissuaded, by solicitations or argument, from disposing of his property as he had previously intended ; he may yield to the pursuasions of affection or attachment, and allow their sway to be exerted over his mind ; and in neither of these cases would the law regard the influence as undue. To amount to this, it must be equivalent to moral coercion. It must constrain its subject to do what is against his will, but which, from fear, the desire of peace, or some other feeling, he is unable to resist." In 1 Williams on Executors, 42, we find the following language : "But the influence, to vitiate an act, must amount to force and coercion, destroying free agency; it must not be the influence of affection and attachment. It must not be the mere desire of gratifying the wishes of another; for that would be a very strong ground in support of a testamentary act. Further, there must be proof that the act was obtained by this coercion ; by importunity which could not be resisted ; that it was done merely for the sake of peace, so that the motive was tantamount to force and fear."—1 Jarman on Wills, 39 ; Dunlap v. Robinson, 28 Ala. 100 ; Leverett's Heirs v. Carlisle, 19 Ala. 80. The charges given, numbered 1, 2, and 3, assert propositions of law, which are laid down in these quotations; and we therefore cannot regard them as erroneous.

4. The effect of the fourth charge given, was not to take from the jury the consideration of the supposed

misrepresentation, in determining the extent of power acquired by the proponent over the testatrix; and whether he had withdrawn her confidence from the child misrepresented, placed her beyond the influence of that child, and thus subjected her to his control. The jury could have implicitly followed the instruction, and yet allowed the fact of the misrepresentation, in connection with the other evidence, to have its full weight upon the decision of the question of undue influence. The instruction to the jury was not, that they should disregard the misrepresentation as evidence in the case, but that the misrepresentation, not having produced a direct effect in influencing the bequest to him who was misrepresented, would not vitiate the will. It raised the question of the effect of the single fact of a misrepresentation, which did not influence the only bequest which, from its nature, it was calculated to affect directly. The propriety of the charge will be made apparent by asking the question : If there were no other evidence than the misrepresentation of Thomas C. Taylor, and the fact that it did not affect the bequest to him, would the will be vitiated? The charge simply answers this question in the negative, and, in doing so, does not violate the law.

5. If the 5th charge given had said, that although the will was made under undue influence, yet, if subsequently ratified when there was no cause for fear, and when the undue influence was removed, *the will would be valid*, we would hesitate to declare it correct. Such a charge would take from the jury the consideration of the other grounds upon which the will was assailed. The charge is not that, upon the facts presented in it, the will would be valid, but that the will "would be same, in law, as if no undue influence had been exerted;" or, in other words that a subsequent ratification, in the absence of fear and undue influence, would leave the case as if undue influence had not been proved. It is conceivable, that the cause of the undue influence, or the agency which exerted it, might be "removed," and yet the influence itself might linger upon the mind of the testatrix. We therefore do not say that a ratification, in the mere absence of the agency which produced the

undue influence, would make the will stand as if no undue influence had been exerted. The question presented by the charge is, whether a ratification, when there is no fear, and when the undue influence—the undue power over the mind of the testatrix—has been removed, will strip the case of all effect from undue influence, as a ground for assailing the will. Thus understood, we think the charge is correct. The undue influence could not be said to continue the exercise of its dominion over the mind, when it has been removed. When the undue influence has been withdrawn, the power and dominion over the mind and will are gone, and they are left free.

6. In the 6th charge there is no error. The standard of the capacity, necessary to qualify one to make a valid will, as laid down in the charge, was not too low. That the testatrix should make a valid will, it was not necessary that her memory should be *perfect*, and her mind *unimpaired*. If she had memory and mind enough to recollect the property she was about to bequeath, and the persons to whom she wished to will it, and the manner in which she wished it to be disposed of, and to know and understand the business she was engaged in,—she had, in contemplation of law, a sound mind; and her great age, bodily infirmity, and impaired mind, would not vitiate a will made by one possessing such capacity. These are the propositions which the charge asserts, and they are correct.—Harrison v. Rowan, 3 Wash. C. C. 385; 1 Jarman on Wills, 50; Coleman v. Robertson, 17 Ala. 84.

7. The instrument executed, in 1856, by Nancy Taylor, Kelly, and William L. Taylor, includes seven slaves, four of which are probably identical with the four slaves mentioned in the will, though that does not appear with certainty. The will does not bequeath only the four slaves which are claimed to be embraced in the instrument of agreement; but, after the bequest of the price fixed upon the slaves, it gives all the household property of the testatrix to Fanny Williams and Martha S. Kelly. Conceding that this instrument of agreement was a revocation of the bequests of the will so far as the slaves mentioned

in that agreement were concerned, it can have no other effect. Waiving the question of the effect of the instrument upon the bequests of the slaves, as one not necessary to be decided here, it is clear that the will was not thereby revoked *in toto*. It still remained a subsisting will as to the household property, and, on that account, was a proper subject of probate, if legally executed and established to the court.—1 Jarman on Wills, 166, § 3.; 1 Williams on Executors, 167, note 2; Powell v. Powell, at the present term. It follows that there is no error in either the 7th or the 16th charge.

8. The charges numbered 9 and 13 were correct. It is established law in this State, that the proponent of a will cannot, by his declarations or acts, manufacture the evidence to defeat the probate of the will, to the prejudice of other legatees, notwithstanding he may be himself a legatee.—Roberts v. Trawick, 13 Ala. 68; Walker v. Jones, 23 Ala. 448; Bunyard v. McElroy, 21 Ala. 311. The proponent was not the only legatee under the will. Besides him and the contestants there were several others. We cannot say that those others assented to have their rights in the matter of the probate of the will affected by the declarations of Kelly, the executor. The question falls precisely within our former decisions, which we approve. The declarations and acts of the proponent of the will cannot estop the court from admitting the will to probate, and, consequently, cannot estop the offer of it for probate by the proponent in this case. If the proponent has estopped himself from asserting any right bestowed on him by the will, as against the contestants or either of them, it may be a matter for consideration in some subsequent suit; but it is entitled to no effect upon the question of the validity of the will in controversy in this case.

9. It may be that the provisions of the will, giving the slaves to Kelly and his wife, to go into their immediate possession, at the price of seventeen hundred and fifty dollars, and allowing to them five hundred dollars of that sum for supplying to the testatrix all things needful for her support and comfort during her natural life, make a

contract *inter vivos ;* but every other provision of the instrument is clearly testamentary. The eleventh charge was not so favorable to the proponent, as he was entitled to have it. The construction of the instrument was for the court; and the court should have instructed the jury, that it was a will. That the court erred in making the question whether it was a will depend upon certain extrinsic facts, was a matter not prejudicial to the contestant. It was an error in his favor. It placed obstacles, unauthorized by law, in the way of the establishment of the will.

10. The fact that some provisions of the instrument offered for probate may have had the force of a contract, and may have become operative during the life time of the testatrix, does not deprive the other provisions of the will of their testamentary character, nor render the instrument inadmissible to probate as a will. Therefore, the court did not err by saying, in the charge numbered 15, that the possession of the slaves by Mrs. Kelly, in the life time of the testatrix, would not vitiate the will.

11-12. The 14th charge is somewhat complex and involved, and may, possibly, have contributed to mislead the jury, by seeming to make the latter of the two propositions which it contains the antithesis of the former. The charge, however, asserts no incorrect proposition ; and its ambiguity, and tendency without explanation to mislead, will not, under the former decisions of this court, authorize a reversal.—Partridge v. Forsyth, 29 Ala. 200. It was the privilege of the party liable to be prejudiced, to protect himself by asking an explanatory charge. The two propositions of the charge are, that the jury were not bound to believe a witness, and that in, determining what is correct testimony, they must look to all the facts and circumstances of the case. In determining the credibility of a witness, the jury looking at all the various matters which legitimately affect his credibility, are to judge whether he merits belief.

13. There is no error in charge number 17. The objection made to it is, that it left the question of revocation, which is supposed to be a question of law, to the jury. Let it be conceded that the revocation of the will involves a ques-

tion of law, and yet the charge contains no error prejudicial to the appellant. The bill of exceptions set out all the evidence, and there is no proof tending to show a revocation of the will. The charge, therefore, in making the negation of a revocation necessary to the establishment of the will, imposed an *onus* upon the proponent which did not belong to him; and thus, if there be error in the charge, it is one favor of the appellant.

14. The principles which we have laid down in passing upon the charges given, cover the questions presented by the charges asked and refused, and show that the court was correct in refusing them.

On the margin of one of the charges asked by the appellant, the presiding judge wrote *"refused,"* and on the face of the same charge, and near the bottom of it, he wrote *"given."* The bill of exceptions states, that the court gave that charge in part, and refused it in part. The charge asserts the two propositions, that certain acts of Kelly would estop him from offering the will for probate, and that he being estopped, the will could not be admitted to probate on his application. The appellant was not entitled to have either one of those propositions given as a charge to the jury; and if either was given, he obtained so much more than he ought to have had. We cannot reverse the case for the refusal of the court to give or refuse the charge as asked, when there is no exception for that omission, and it affirmatively appears that the appellant was not prejudiced thereby.

The judgment of the court below is affirmed.