## BLAKEY'S HEIRS vs. BLAKEY'S EXECUTRIX.

[CONTESTED PROBATE OF WILL.]

1. *Parties to proceeding.*—In a contest before the probate court respecting the validity of a will, the proponent is the party plaintiff, and the contestants are the defendants; and the other heirs-at-law, or distributees, though notified of the proceeding, are not parties to it, unless they come forward and make themselves parties.

2. *Motion to suppress deposition on account of incompetency of commissioner.*—A deposition, taken in Texas, will not be suppressed on account of the incompetency of the commissioner by whom it was taken, on proof of the simple fact that a person of the same name, who had lived in Alabama, was a brother-in-law of one of the parties to the suit.

3. *Competency of former proponent as witness for will.*—A person named executor in the will, who has formally renounced the executorship, is a competent witness to sustain the will, although it is shown that he had once propounded the will for probate, but had dismissed his proceeding before the second application was made, and had not paid the costs.

4. *Admissibility of proponent's declarations as evidence against will.*—The declarations of the proponent, he not being the sole legatee, are not competent evidence to defeat the probate of a will, when all the other legatees are neither contesting parties, nor consent to the admission of the declarations.

5. *When witness may testify to ignorance of fact.*—Where the situation of a witness was such that, if a certain fact had existed, he would probably have known it, his want of knowledge is some evidence (though slight) that it did not exist; and he will be allowed to testify, in such case, that if the fact existed, he did not know it.

6. *Competency of special administrator as witness for will.*—A special administrator of the estate is a competent witness for the proponent of a will, (Code, § 2302,) although a decree admitting the will to probate would have the effect of placing him in a state of security against some of his official acts.

7. *Mode of impeaching witness.*—The testimony of a witness on immaterial points cannot be contradicted for the purpose of impeaching him.

8. *Charges on mental capacity, fraud, and undue influence, approved.*—The several charges given by the court in this case, in reference to testamentary capacity, fraud, and undue influence, held correct, on the authority of the following cases : *Coleman v. Robinson,* 17 Ala. 84 ; *Leverett v. Carlisle,* 19 Ala. 80 ; *Gilbert v. Gilbert,* 22 Ala. 529 ; *Taylor v. Kelly,* 31 Ala. 59 ; *Dunlap v. Robinson,* 28 Ala. 100 ; *Hughes v. Hughes,* 31 Ala. 520.

APPEAL from the Probate Court of Bibb.

IN the matter of the last will and testament of Joseph A. Blakey, deceased, which was propounded for probate by the testator's widow, and contested by his six children by a former marriage. The will contained legacies in favor of each of the contestants, consisting of several slaves and several hundred dollars, described as having been already delivered to them ; and bequeathed the residue of the testator's estate, both real and personal, to his wife for life, with remainder to her two children by him. The executors named in the will were, Henly Snead and George W. Blakey ; the latter being one of the testator's children and one of the contestants. The grounds of contest were, fraud, misrepresentation, undue influence, and insufficiency of execution and attestation.

Before the trial was entered upon, as appears from the bill of exceptions, the proponent moved the court to suppress the deposition of Margaret Whitman, "on the ground that Nelson H. Rice, the commissioner by whom said deposition was taken, was a brother-in-law of Theodoric S. Blakey, one of the contestants." "On this motion, the following facts were adduced in evidence before the court : One Henly Snead testified, that he knew Nelson H. Rice in Alabama, who was the brother-in-law of said Theodoric S. Blakey. The deposition appeared on its face, and from the post-marks on the envelope, to have been taken in Texas. There was no proof as to the handwriting in which it was taken, or that the signature of the commissioner was in the handwriting of that Nelson H. Rice known by Snead in Alabama; nor was there any other evidence as to the identity of that Nelson H. Rice with the commissioner." The court suppressed the deposition, and the contestants excepted.

The proponent offered Henly Snead as a witness, who

was one of the subscribing witnesses to the will, and also one of the executors therein named. The contestants objected to his competency on the ground of interest; and on his examination on his *voir dire*, the following facts were shown to the court: " That witness had heretofore propounded said will for probate in this court, and, after it had been pending for some time, and after some costs had accrued, he had dismissed his said application, and filed in said probate court his written renunciation of the executorship, which was accepted by said court; that he had not paid said costs, and thought they ought to be paid out of the estate, but he was bound for them, and could pay them; and that he did not know, if the will was admitted to probate, whether he would become the executor thereof or not, nor whether he would have a right to become executor or not." The court overruled the objection to the competency of the witness, and allowed him to be examined; to which the contestants excepted.

The contestants introduced evidence conducing to show that the will was procured by the exercise of undue influence over the testator by the proponent; and for this purpose they adduced proof of the testator's declarations, both before and after the execution, to the effect that he did not wish to make such a will, but was induced to make it by his wife's importunities, "and for the sake of peace in the family." One Stanley, a witness for the contestants, who testified to these declarations of the testator, further stated, "that Dr. Gradick attended him [testator] in his sickness, and that Dr. Gradick then lived in Centreville in said county;" also, "that he [witness] had known the testator for about twenty years, lived within a mile of his house, and had always been very friendly and intimate with him, until three or four years before his death, when a coolness sprang up between them on account of a school." The proponent, in rebuttal of the evidence adduced by the contestants, introduced a witness who testified, "that he [witness] came to Centreville in March, 1853, and that Dr. Gradick did not reside there during any portion of the balance of that year;" and another witness who testified to declarations of the wit-

ness Stanley, made fifteen years before the trial, to the effect that unfriendly relations then existed between him and the testator. The contestants objected to the competency of the testimony of each of these witnesses, and reserved exceptions to the rulings of the court in admitting it.

The contestants offered to prove declarations and admissions of the proponent, made after the execution of the will, in substance as follows: "that her husband had made a will, and had given all his property to his and her children; that she never let him rest, day or night, until he had made the will to her notion, and that she was then satisfied." The court excluded this evidence, on the proponent's objection, and the contestants excepted.

"The proponent introduced one Logan as a witness, who stated, that he boarded at the testator's house before the date of the will, and at different times from 1849 up to the date of the will. The proponent then asked said witness, if he ever knew of any serious difficulty between the testator and the proponent. To this question the contestants objected, but the court allowed it to be asked; and the witness answered, that he knew of no serious difficulty between them. To this answer also the contestants objected, but the court overruled their objection; and to both these rulings of the court the contestants excepted."

"The proponent offered to introduce one Dr. Moren as a witness, who stated, on his *voir dire*, that he was the special administrator of said Joseph A. Blakey's estate, having been appointed by said probate court in October, 1857, (under an order which was read in evidence,) to act as such administrator until the will of said decedent should be admitted to probate; that he had been acting as such administrator from the time of his appointment; that he had allowed the proponent and her two children to live on the plantation on which the testator lived at the time of his death; that the plantation had been carried on, under his directions, with the slaves and other property of the estate, and the proponent and her two children had been supported therefrom; and that he had

allowed one of the negroes belonging to the estate to wait about the house for the proponent and her family. It was admitted by the proponent, that the rent of the land and the hire of the negroes were worth more than the crop raised on the plantation during the present year." The contestants objected to the competency of the witness on these facts, and reserved an exception to the overruling of their objection.

"The court charged the jury, among other things,—

"1. That a will is unequal to the testator's children or relations, is no legal reason that it should be considered an irrational act; and the law puts no restrictions upon a man's right to dispose of his property in any manner his partialities, pride or caprice may prompt, if he is of sound mind and disposing memory.

"2. Fraud is a trick, artifice, or management, which induces a person to dispose of his property, or to do some act, contrary to his wishes, or in such a way as he would not but for such fraud. The burden of proving fraud, in this case, is on the contestants; and unless they have satisfied the jury by the testimony in the case that this will was procured by some artifice, trick, or management, and that the testator, but for such artifice, trick, or management, would not have made this paper as his last will as it is made—— (?)

"3. Undue influence is influence that amounts to, or is equivalent to moral coercion; it must constrain the testator, or the subject of it, to do what is against his will, but which, from fear, the desire of peace, or some other feeling, which he was unable to resist.

"4. The burden of proving undue influence is on the contestants; and unless they have satisfied the jury by the evidence that undue influence was exercised over the testator, to such a degree as to amount to moral coercion, which the testator was unable to resist, and that such influence caused or produced the will, and that the testator, but for such influence, would not have made a will, or would have made a will different from the one offered for probate,—this issue would not be established, and the jury could not find it in favor of the contestants.

"5. If the jury believe from the evidence that the contestants have not satisfied the jury that the paper offered for probate was procured by fraud, or that it was the result of undue influence, but that it was the well-understood, free act and will,—then the jury should find in favor of the will, if the testimony as to the signature satisfies them that it was signed and attested as the law requires."

To each of these charges the contestants excepted, and they now assign the same as error, together with all the other rulings of the probate court to which they reserved exceptions.

The appellee submitted a motion to dismiss the appeal, on the two grounds, that the proper parties were not made, and that the appeal bond was insufficient on account of a misdescription of the decree; both objections being founded on the fact, that only the proponent and the contestants, without the other heirs-at-law, were named as parties to the decree and appeal. The motion was argued and considered at the same time with the other points in the case.

I. W. GARROTT, for the appellants.

J. R. JOHN, *contra*.

R. W. WALKER, J.—1. When a will is propounded for probate, the proceeding is *in rem*. The object of the statute which requires that notice of the application shall be given to the widow and next of kin of the testator, is that such persons may, if they choose, make themselves parties to the proceeding. When notified, they have the option to stand by passively, or take an active part on either side. But they cannot be considered parties to the suit, unless they come forward, and, by some affirmative act, engage in the litigation. Hence, when an issue is formed in the probate court, between the proponent and persons contesting the will, the former is deemed the plaintiff, and the latter are considered the defendants. They alone are the parties to the suit. It follows, that the decree in this case is correctly described, as having been

rendered in a case in which the proponent was plaintiff, and the contestants defendants; and that the appeal was properly taken in the name of the contestants, without joining the next of kin who had not made themselves parties. The motion to dismiss the appeal is, therefore, overruled.—Code, § 1634; Sawyer v. Dozier, 5 Ired. 97; Deslonde v. Darrington, 29 Ala. 92.

2. We think that the court erred in suppressing the deposition of Margaret Whitman. The only evidence that the commissioner was the brother-in-law of one of the defendants, was the mere identity of name. The deposition was taken in Courtland, Texas, by Nelson H. Rice; and proof that there was a Nelson H. Rice, who had lived in Alabama, and was the brother-in-law of one of the defendants, was not sufficient, without more, to raise the presumption that he was the person of that name who had taken the deposition. If there had been evidence that the brother-in-law had removed to Texas, or that he was in Courtland at the time when the deposition was taken, the result might have been different.—See Desha, Shepherd & Co. v. Stewart, 6 Ala. 852; Colgin v. Redman, 20 Ala. 650.

3. The witness Snead had formally renounced the executorship, and dismissed the proceeding instituted by him to have the will admitted to probate. Under these circumstances, we see no reason which would render him an incompetent witness to sustain the will, in a subsequent proceeding in which another person was the proponent. The fact that he was liable for costs in the former case, which he had instituted and dismissed, cannot affect his competency in this proceeding.—See Burritt v. Silliman, 3 Kernan, 93; Sawyer v. Dozier, 5 Iredell, 97.

4. It is the settled law of this court, that the declarations and acts of a proponent, who is not the sole legatee, are not admissible in evidence to defeat the probate of the will. If all the other legatees were contesting the will, or consenting to the admission of the testimony, the rule would doubtless be different.—Roberts v. Trawick, 13 Ala. 68; Walker v. Jones, 23 Ala. 448; Bunyard v. McElroy, 21 Ala. 311; Taylor v. Kelly, 31 Ala. 73. There was no

40

error, therefore, in excluding the various declarations and acts of the proponent, offered in evidence by the contestants.

5. The proponent had the right to rebut the evidence which the contestants had introduced, to show the state of feeling between the testator and the proponent, who was the principal legatee; and for this purpose, the testimony of the witness Logan, though entitled to but little weight, was relevant. This witness is shown to have had opportunities for knowing the state of feeling between the testator and his wife; and his testimony comes within the influence of the rule, adopted by this court, that " when the situation of a witness is such, that if a certain fact had existed, he would probably have known it, his want of knowledge is some evidence, though slight, that it did not exist.—Nelson v. Iverson, 24 Ala. 9; Ward v. Reynolds, 32 Ala. 384.

6. Under the Code, (§ 2302,) it is not a sufficient reason for excluding a witness, that the effect of a judgment in favor of the party who introduces him would be to place him in a state of security. His competency depends upon the question, whether the verdict and judgment would be evidence for him in another suit; and the test whether they would be evidence for him, is the inquiry, would they be evidence against him if adverse to the party introducing him? In other words, the witness is competent, unless the verdict and judgment would be evidence for or against him in another suit, according as they may be for or against the party calling him.—Harris v. Plant, 30 Ala. 634; Atwood v. Wright, 29 Ala. 346. As a decree, refusing to admit this will to probate, would, as to the witness Moren, be *res inter alias acta*, and therefore could not in any subsequent suit be evidence against him, he was not incompetent.—Authorities *supra;* see, also, Coalter v. Bryan, 1 Grattan, 86.

7. The contestants introduced as a witness one Stanley, who, in the course of his testimony, stated, that he had been upon friendly terms with the testator, until within a few years before the death of the latter; that in September, 1853, he (the witness) was sick, and that at that time

one Dr. Gradick, who was his attending physician, lived in Centreville in Bibb county. The court allowed the proponent to contradict this witness upon the points just mentioned, by proving a declaration, made by him many years before the trial, that he and the testator were not on good terms; and by showing that Dr. Gradick did not live in Centreville at the time stated by Stanley. Construing the bill of exceptions most strongly against the appellant, we must presume that these statements of the witness, which the court permitted to be disproved, were made on his examination in chief, either voluntarily, or in response to questions from the party introducing him.

"It is a well-settled rule, that a witness cannot be cross examined, as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him. And if a question, which is collateral or irrelevant to the issue, is put to a witness, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him."—1 Greenl. Ev. § 449, and cases. In Ortez v. Jewett, 23 Ala. 662, this court said: "You cannot question a witness, or allow the other party to question him without objection, about a matter not relevant to the issue, in order to lay a ground for impeaching him, by calling witnesses to disprove what he says." In that case, a witness had, in the course of his testimony, and, as it would appear, upon his examination in chief, sworn to a fact irrelevant to the issue, and the defendant offered evidence to disprove this statement. This court held, that it was not permissible to do so.

It is true that a different rule was announced in Dozier v. Joyce, 8 Porter, 303, in which, while it was admitted that a witness cannot be cross examined as to a collateral fact, for the purpose of contradicting and thus impeaching him; yet, it was held that, if the witness voluntarily swears falsely, as to matters not within the issue, he may be impeached by contradicting him. In that case, it seems to have been considered, that the main reason for the rule, which prevents a cross examination upon immaterial matters for the mere purpose of contradicting the witness, is, that he cannot be presumed to come prepared to defend

himself on such collateral questions; and as this reason
fails when the testimony is voluntarily given, the rule
itself does not in that case apply.   The reason referred
to is doubtless one of those on which the rule is founded,
but it is not the only, or even the chief one.   The prin-
cipal reasons of the rule are, undoubtedly, that but for its
enforcement the issues in a cause would be multiplied
indefinitely, the real merits of the controversy would be
lost sight of in the mass of testimony to immaterial
points, the minds of jurors would thus be perplexed and
confused, and their attention wearied and distracted, the
costs of litigation would be enormously increased, and
judicial investigations would become almost interminable.
An additional reason is found in the fact, that the evi-
dence not being to points material in the case, witnesses
guilty of false swearing could not be punished for perjury.
1 Greenl. Ev. § 448; Powers v. Leach, 26 Verm. 270.
These reasons apply .equally whether the evidence on
such collateral matters is brought out on the examination
in chief, or upon cross examination, and whether the wit-
ness gives it voluntarily, or in response to questions call-
ing for it.   Almost every witness who testifies in court is
apt to connect with the material facts stated by him some
matters wholly collateral and impertinent; and it would
be intolerable to allow all such incidental statements to
be taken advantage of for the mere purpose of contradict-
ing and thereby impeaching the witness.   If such a prac-
tice were sanctioned, every trivial circumstance mentioned
by a witness might become the subject of a separate and
subordinate issue, which would have nothing whatever to
do with the real question to be 'determined, but would
inevitably serve to confuse the jury and prolong the trial.
These considerations induce us to prefer the conclusion
attained in the case of Ortez v. Jewett, *supra*, to the rule
adopted in Dozier v. Joyce, *supra*.

Stanley's testimony went mainly to show certain acts
and declarations of the testator, in reference to his making
a will.   The statements that he and the testator were on
friendly terms, and that Dr. Gradick lived in Centreville
at the time when the witness was sick, appear as purely

incidental matters, and could not be relied on by the contestants as tending to establish any fact pertinent to the issue. The only purpose which could be subserved by contradicting the witness on these points, would be to discredit him before the jury; and this being the case, we think that the court erred in admitting the evidence offered to disprove the statements referred to.

This conclusion is not inconsistent with the ruling of this court in several cases, in which it has decided, that where one party introduces illegal testimony, he cannot complain on error that the court permitted the other party to rebut it; the principle being, that testimony inadmissible in itself becomes competent by the introduction of other evidence to which it may be a reply. In all the cases in which this rule has been asserted, the evidence which was allowed to be rebutted, although inadmissible according to legal principles, was yet of such a character, or had such a relation to the facts in issue, that, if uncontradicted, it would probably exert some influence upon the minds of the jury in reference to the question to be decided by them. The rule has no application, where the facts testified to are not only wholly collateral to the issue, but obviously could not, even if true, exert any influence upon the minds of the jury in making up their verdict. Besides, the right allowed is to introduce evidence simply for the purpose of *rebutting* illegal testimony, and of thus neutralizing its effect, and not for the purpose of discrediting a witness.—See Havis v. Taylor, 13 Ala. 326; Findley v. Prewitt, 9 Porter, 195; Nelson v. Iverson, 24 Ala. 9; Rogers v. Wilson, Minor, 407; 3 Phill. Ev. (3d ed. 1850) 594; 4 *ib.* 723.

8. The several charges to the jury, given by the court, seem to be unobjectionable. They are fully sustained by the authorities, and are, for the most part, expressed in the language employed by this court in the following cases: Coleman v. Robertson, 17 Ala. 84; Leverett v. Carlisle, 19 Ala. 80; Gilbert v. Gilbert, 22 Ala. 529; Taylor v. Kelly, 31 Ala. 59; Hughes v. Hughes, 31 Ala. 520; Dunlap v. Robinson, 28 Ala. 100; see, also, 1 Wms. on Ex'rs, 42.

We have not been able to discover any errors in the record, other than those we have indicated.

For the errors pointed out, the decree of the probate court is reversed, and the cause remanded.