(122 So. 349)

## MOORE v. HOLROYD. (6 Div. 39.)

Supreme Court of Alabama. April 11, 1929.

Rehearing Denied May 23, 1929.

Frank Dominick, Ben F. Smith, and Stokely, Scrivner, Dominick & Smith, all of Birmingham, for appellant.

Altman & Koenig, of Birmingham, for appellee.

BOULDIN, J. In common parlance, this is a suit for malpractice.

Count A of the complaint, on which the case went to the jury, charges that the defendant, a physician and surgeon, negligently conducted himself in and about a surgical operation and treatment of plaintiff in a case diagnosed as peritonitis, resulting in hernia, with impairment of health and constitution.

It appears the plaintiff, a child between four and five years of age, first developed swollen joints, soreness to the touch, nervousness, and constipation. Dr. Ransom was first called in, and a little later Dr. McLean, a child specialist, was called as consulting physician. They agreed there was serious infection, suspected a ruptured appendix, advised an immediate operation, and Dr. D. S. Moore, this defendant, was selected as operating surgeon. The child was hurried to South Highlands Infirmary, and, concurring in the diagnosis, Dr. Moore promptly performed the operation. The appendix was not ruptured, was not the cause of the infection, but, according to defendant, infection ap-

peared in the peritoneum, and the appendix was removed by way of precaution.

On the evidence, the trial court charged out an issue as to negligence in the matter of deciding upon and performing an operation.

The case went to the jury on the question of negligence in the matter of properly suturing the tissues and closing the wound. Plaintiff insists the wound was left open and the ugly hernia which developed was due to negligence in this regard. Defendant insists the peritoneum, the muscles, and fascia were all properly sutured, and the skin on the outside closed by steel clips in common use for such purpose; that drainage for the operative wound was provided; that the hernia resulted from breaking down of the tissues from infection due to no fault of the defendant; Much professional evidence was taken upon the likelihood of hernia from infection and lowered vitality in such cases.

Dr. Hankins, called in after the child was removed from the hospital some 20 days subsequent to the operation, testifying for plaintiff, expresses the opinion that the operative wound had not been properly closed. Some other corroborative evidence appears. We avoid any expression of opinion upon the weight of the evidence, or discussion of details other than necessary to a decision upon the specific questions presented on this appeal.

We think a jury question was presented under the evidence on the issue of negligence vel non in the matter of closing and suturing the operative wound.

■ The testimony of Mrs. Holroyd to the effect that when the child was brought home she could see no signs of stitches having been made was admitted without error. Dr. Hankins' evidence tends to show that in the open condition of the exterior portion of the wound at that time visible signs of suturing should appear on inspection. That Mrs. Holroyd was not an expert witness would not disqualify her to testify as to whether she saw stitches or markings of the kind. Lack of professional experience would go only to the probative force of her observations.

, ■ Neither was this witness required to be an expert to testify whether there was any gauze or other drain in the wound when she saw it. Either gauze or a tube was the only type of drain claimed to be used by defendant. This evidence would seem to be harmless anyway in that defendant's insistence was the drain had been removed prior to the time Mrs. Holroyd saw the wound.

■ Miss Alice Wilson was the special day nurse engaged to nurse the child while in the infirmary. She testified as a witness for defendant. She had married in the meantime and testified under her married name, Mrs. Garrison.

Mrs. Holroyd, called in rebuttal, testified that she met Miss Wilson on the street soon after the child was returned home, that Miss Wilson asked how the wound was healing, that witness replied it was not doing so well because it had not been sewed up, and that Miss Wilson responded: "Sometimes it is not necessary to sew little children; their flesh is too tender; it is not necessary to sew them up."

■ Clearly, Dr. Moore was in no way bound by any such statement of Miss Wilson. As to him the statement was immaterial and pure hearsay. Objection on the ground that it was immaterial and not binding on defendant was sufficient.

Miss Wilson's direct testimony related chiefly to identifying the hospital chart and care of the patient in keeping with directions. She disclaimed any personal knowledge of the operation. Her alleged statement to Mrs. Holroyd was not at variance with any material phase of her testimony, and hence not admissible for purposes of impeachment.

Appellee seeks to justify the admission of this evidence upon the ground that Mrs. Garrison was fully questioned on cross-examination touching this conversation without objection. She denied making the statement attributed to her by Mrs. Holroyd.

■■ A party may object to immaterial evidence drawn out on cross-examination for purposes of impeachment, but he is not required to interrupt the cross-examination of his witness and interpose objection. His failure to object does not imply consent that such immaterial matter become an issue in the case. The rule is well settled that the answer of the witness on cross-examination is conclusive as to such matter, and may not be contradicted by other witness for purposes of impeachment. Carter v. State, 133 Ala. 160, 32 So. 231; Seale v. Chambliss, 35 Ala. 19; Blakey's Heirs v. Blakey's Ex'x, 33 Ala. 611, 619; Ortez v. Jewett, 23 Ala. 662; 1 Greenl. Ev. § 449.

■ Much evidence was drawn out during the trial tending to show interest and bias on the part of physicians and nurses, witnesses for defendant. To discredit the direct testimony of Dr. Moore and his corroborating witnesses was necessary to a verdict for plaintiff. Argument of counsel was directed to the same end. In the closing argument plaintiff's counsel made reference to "a closed corporation" between doctors and trained nurses.

■ The question of bias is a legitimate inquiry in evidence and one for legitimate discussion in argument. All witnesses are subject to like scrutiny in this regard. The law knows no favorites. The reference to "a closed corporation" was not without the range of lawful argument. But we must keep such line of testimony and argument in mind in passing upon the probable injury to defendant in admitting illegal testimony, the testimony of Mrs. Holroyd as to the declaration of Miss Wilson, the nurse.

Looking at the entire record, such evidence was well calculated to impress the jury as an implied admission that the wound was not sewed up, with an effort to justify or excuse such course. We do not think the error in admitting Mrs. Holroyd's evidence on this point was harmless.

Plaintiff's counsel, Mr. Taylor, in opening argument, said: "I tell you, gentlemen of the jury, that in my judgment and in my experience in trying cases up here, whether it is against a doctor or some organization that they are testifying for, I tell you that I have found in my experience of practicing law here over a number of years, in hundreds of cases, that doctors are the most closely bound together organization that I have ever seen—closer than any fraternal organization."

Wide latitude is allowed in the discussion of evidence, such as. invoking the experience, observation, judgment and common sense of the jury in weighing the testimony as affected by bias or otherwise. But the above quoted argument seems to place counsel in the role of an expert witness, first qualifying himself by statements outside the record, and, on the basis of such qualification, deposing to an unprecedented bond of union among doctors in cases of this character.

Whether jurors, all presumably well acquainted with the personnel of the profession, could be influenced by such comments, would be difficult to say. The argument was improper. We need not decide whether overruling objection thereto was reversible error, standing alone.

The cause is reversed for the error first discussed, in the light of the entire record.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.